DES MOINES RUG CLEANING COMPANY et al., Appellees, v. AUTOMOBILE UNDERWRITERS et al., Appellants.

No. 41212.

NOVEMBER 15, 1932.

Bradshaw, Schenk & Fowler, for appellee.

Walter L. Stewart, for appellant.

WAGNER, J.—The plaintiff, a copartnership, consisting of D. G. Carnahan and W. A. Keith, is engaged in business in the city of Des Moines in cleaning, laying and making rugs, etc. On May 27, 1929, the State Automobile Insurance Association, by or through Automobile Underwriters, Incorporated, its duly authorized attorney in fact, issued to the plaintiff a policy of insurance. By the terms of the policy, the defendant, The State Automobile Insurance Company, agreed "to indemnify against loss from the liability imposed by law (subject to the limits hereinafter stated) upon the Assured on account of bodily injuries or death, accidentally suffered or alleged to have been suffered by any person or persons as the result of an accident occurring while this contract is in force, due to the ownership, maintenance or use of any automobile described in this contract," and "to indemnify against loss from the liability imposed by law (subject to the limits hereinafter stated) upon the Assured on account of damage to or destruction of property of others (except property in charge of the Assured or any of the Assured's employees, or carried in or upon the automobile covered by this contract), arising from an accident occurring while this contract is in force, due to the ownership, maintenance or use of any automobile described in this contract." The automobile mentioned in the policy of insurance is a ¾ ton truck. On July 20, 1929, a collision occurred between the said truck, which was being operated at that time by Wingert, an employee of the plaintiff-copartnership, and an automobile owned by one Walker. In the Walker car at the time in question were three other occupants. As a result of the collision damage occurred to all of the occupants of the Walker car. Notice of the accident was given to the defendant the State Automobile Insurance Association. On August 23, 1929, separate suits were instituted by the occupants of the Walker car, demanding damages against the plaintiff-copartnership by reason of the collision. Notice of the filing of said suits was given to The State Automobile Insurance Association, with the demand to defend and indemnify the

plaintiff-copartnership for any loss it might sustain. Said Insurance Association notified the plaintiff-copartnership that it denied liability under the contract of insurance for any loss sustained on account of the collision. The above-mentioned suits came on for trial, and final judgments were entered against the plaintiff-copartnership in the aggregate sum of $2,800.00 and costs, which judgments, with interest thereon, the plaintiff-copartnership has paid. The plaintiff-copartnership brings this action to recover the amount which it has paid.

The policy of insurance contains, among others, the following condition:

"This contract does not cover losses resulting or arising from any of the following causes, or while any automobile described herein is being used or maintained under any of the following conditions: * * * Under Clauses 1 and 2 [those hereinbefore quoted] while being operated by any person under sixteen years of age or prohibited by law from driving an automobile, or while being operated by any person not having a chauffeur's or driver's license if required by law."

As stated in the preliminary statement to this opinion, the defendants alleged as a defense the foregoing condition contained in the policy, and that at the time of the accident, the automobile mentioned in the policy was being operated by Wingert, employee and chauffeur of the plaintiff; that Wingert at the time in question was not licensed as a chauffeur in accordance with the requirements of Section 4943, 1927 Code of Iowa. Upon this issue, the case was tried to the court, without a jury, and the court found that the employee, Wingert, was not a "chauffeur" within the meaning of the statutes of Iowa, therefore not required to have a chauffeur's license—and rendered judgment in favor of the plaintiff for the amount claimed. From this judgment, the defendant insurance company has appealed.

The employee, Wingert, was not licensed as a chauffeur, and the question presented by the appeal is as to whether Wingert, who was operating the car at the time of the collision with the Walker car, was such a person as is required by the provisions of Section 4943, Code 1927, to be licensed as a chauffeur. It is conceded by the appellee that if Wingert is such a person, then, by reason of the

aforesaid condition of the policy, there is no liability as against the appellant. Said Section 4943 provides:

"It shall be unlawful for any person *known as a chauffeur, and employed for hire therefor*, to operate or drive a motor vehicle upon the public highways unless licensed by the department as herein provided." (Writer's Italics.)

A "chauffeur" as defined by our motor vehicle law is:

"Any person who operates an automobile in the transportation of persons or freight and who receives any compensation for such service in wages, commission or otherwise, paid directly or indirectly, or who as owner or employee operates an automobile carrying passengers or freight for hire, including drivers of hearses, ambulances, passenger cars, trucks, light delivery, and similar conveyances; * * *" See Par. 6, Sec. 4863, Code 1927.

It becomes necessary to refer to the evidence upon this decisive question, which we will now proceed to do. The appellee-copartnership operates an establishment in Des Moines for the purposes hereinbefore mentioned. The testimony of one of the copartners, Carnahan, as to this material question is uncontradicted and is as follows:

"S. A. Wingert and Hugh F. Schneider are the only employees of the company besides my partner, Mr. Keith and myself. In July, 1929, we owned one automobile truck, the truck referred to in the insurance policy. We had no other automobiles. The truck was used in picking up rugs and delivering them. Q. Did you have in your employ at that time anyone whose duty it was to operate the truck? A. One man, yes. Q. What was his name? A. Hugh F. Schneider. Q. What are Mr. Schneider's duties? A. To pick up orders and deliver them: that is, he called for rugs at the houses and brought them to the factory where they were cleaned, and then it was his business to deliver them again. Mr. Schneider drove and operated this truck entirely—almost exclusively. When he was on duty, none of the other employees had anything to do with the operation or driving this truck. Q. What are Mr. Wingert's duties? A. Wingert's duties are largely the cleaning of rugs. Of course, he had other work. We make a great many new carpets and part of his business is sewing and laying those, and also laying linoleum. The rugs are brought into the factory and it is his business to clean

them. He has some other work to do, but it is simple compared with that part of it. Wingert spent most of his time at the factory. Q. Did Wingert, as a part of his duties, have anything to do with the operation of this truck, while Mr. Schneider was there? A. No, Schneider has been in our employ about 11 years and Wingert about 20 years."

At this point in his testimony, it was stipulated that Schneider, the other employee, held a chauffeur's license for the year 1929, issued by the secretary of state. The witness further testified:

"Mr. Wingert was driving the truck at the time of the accident. Mr. Schneider was on vacation. Mr. Wingert was delivering a couple of rugs that he had cleaned, to a customer at the time the accident occurred. Mr. Wingert had cleaned the rugs at the factory and was taking them back to the customer. The summer is the slack season of the year. When Mr. Schneider is on duty, it is Mr. Schneider's duty to operate the truck at all times. If on a trip Schneider was accompanied by Wingert, or any other employee, he [Schneider] would drive the truck. Mr. Schneider had the responsibility of the car and the maintenance of the truck. Q. Mr. Carnahan, I want you to state whether Mr. Wingert was employed by you in the capacity of chauffeur. A. He was not. Q. I would like to ask you, Mr. Carnahan, to state whether Mr. Wingert received any compensation from the Des Moines Rug Cleaning Company for his services as a chauffeur? A. No, sir. Q. I would like to ask you, Mr. Carnahan, whether or not in your place of business Mr. Wingert was known as a chauffeur for the Des Moines Rug Cleaning Company? A. He was not. At the time of the accident, Mr. Schneider had been off duty two or three days."

On cross-examination, the witness testified:

"Mr. Wingert's duties consisted in cleaning the rugs, remodeling, making over carpets. He looked after the repairing of the machinery and anything of that kind that has to be done about the plant. Those duties are various, mostly cleaning of rugs, because that takes most of his time except during the quiet season in June, July and August, when there isn't much business. It is a part of Mr. Wingert's duties to put the rugs down when they are taken back to a customer. Q. And when Mr. Schneider was away, he [Wingert] drove this truck? A. Yes, that was his business, if there was any

cleaning to be done, pick up the rugs and take them back. Q. And if Schneider was away, he [Wingert] drove the truck? A. When Schneider was away, that is the only time, yes. Mr. Schneider's duties besides driving the truck, if he had any time after picking up and delivering his orders, he was used about the plant cleaning rugs, if there was anything of that kind to be done; but his time was all or practically all on the truck, picking up and delivering. If he had time, he was to clean rugs and do whatever there was to be done around the place. It was not a part of Mr. Schneider's duties to help lay the rugs at the customer's premises. Wingert was employed around the plant as a cleaner of rugs and a sizer of rugs and looking after machinery, and he was to drive this truck when Schneider was away. Both of these men got the same salary. They were paid by the week. The charge made to the customers included the picking up and delivery of rugs."

On redirect examination, the witness testified as follows:

"Mr. Schneider's vacation was from a week to ten days. During that time, there was no one around the plant except my partner, Mr. Keith, myself and Mr. Wingert; and at the time Mr. Wingert's duties were to clean and repair the rugs at the plant and then take them out and lay them at the customer's premises."

Perhaps it is not amiss to say that Section 4943, Code 1927, has been repealed and a substitute enacted therefor, requiring both chauffeurs and operators to obtain a license. See Section 4960-d1 et seq., Code 1931. However, the question for our determination in the instant case is as to whether the employee, Wingert, under the aforesaid record, is such a person as was required by the provisions of Section 4943, Code 1927, to be licensed as a chauffeur. Under the provisions of said section, no one was required to obtain a license, except a person "known as a chauffeur, and employed for hire therefor." This is a case of first impression in this state upon the question presented, but the question has been passed upon in other jurisdictions relative to a similar statute. See Matthews v. State (Tex.), 214 S. W. 339; People v. Dennis, 166 N. Y. S. 318; Day v. Bush, (La.) 139 So. 42; 42 C. J. 743. The import of the decisions upon this question is that the term "chauffeur," as used in the statutes, requiring a person who desires to operate a motor vehicle as a chauffeur first to obtain a chauffeur's license, means a *paid operator or employee*,—that is, a person who is employed

and paid by the owner of a motor vehicle to drive and attend to the car, and does not include operators who are not employed and paid for operating the motor vehicle, and therefore does not include an employee who receives his compensation for services rendered other than the operation of motor vehicles, although in performing such services he may incidentally operate a motor vehicle. See 42 C. J. 743.

In Matthews v. State (Tex.), 214 S. W. 339, Matthews was charged with operating an auto truck without a chauffeur's license. He was employed by the Texas Oil Company as a salesman at a stipulated monthly salary. He drove an automobile furnished by the company, took orders, and delivered goods. The Texas statute provides:

"No person shall employ for hire as a chauffeur of a motor vehicle any person not licensed," etc. "By 'chauffeur' is meant any person whose business or occupation is that he operates a motor vehicle for compensation, wages or hire."

The court, in applying the statutory provisions just quoted to the facts presented, held that it was not the intention of the legislature to require a chauffeur's license of a person within the plaintiff's classification. In passing upon the question, the court declared:

"This definition as well as the provisions of this act seem to apply to those who are *known as chauffeurs, and who operate motor vehicles as such chauffeur for compensation, wages, or hire.* * * * It would seem from reading the definition of 'chauffeur' that in order to bring him within that class he must operate the motor vehicle *as such* for compensation, wages, or hire, and it would further seem this would apply directly to the fact or relation of driver of the vehicle for compensation, wages, or hire, and would seem to exclude the idea that the vehicle was used as an incident to carrying on the business. If appellant (Matthews) was driving the auto truck for a stipulated sum or wages, or part of the profits that might arise from the use of the vehicle, when used for others, he might be within the definition given by the Legislature, but the relation, however, seems to be direct, *that the chauffeur must operate the vehicle as such and for the purpose of so making money, and should as chauffeur receive compensation for operating it.* * * * So it would seem from a reading of the Texas statute, viewed in the

light of the general acceptation of the term 'chauffeur,' that where a license is required of the chauffeur for hire or wages, *it has a direct relation to his employment to run the vehicle itself for hire, and not as an incident to the delivery of the goods, wares, and merchandise of his employer.*" (Writer's Italics.)

In the instant case, it was Schneider, not Wingert, "who was known as a chauffeur and employed for hire" to run the truck. The record conclusively establishes the fact that Wingert was not employed in the capacity of chauffeur; his monthly salary was compensation for the service rendered by him in the cleaning, making and laying of rugs, carpets and linoleums—not compensation for running the truck. His operation of the truck in delivering the goods during the period of two or three days when Schneider was absent was not a part of his regular duties or employment, but was only incidental to what constituted his regular employment and usual duties.

The trial court was right in holding that, under the facts of this case, Wingert was not such a person as is required by the provisions of Section 4943, Code 1927, to be licensed as a chauffeur.

Appellant also makes some slight complaint relative to the rulings of the trial court on the introduction of the testimony. The matters are such as not to require specific mention. We have carefully examined the record in the light of the objections made, and find no prejudicial error. The judgment of the trial court is correct, and the same is hereby affirmed.—Affirmed.

All the justices concur.