W. C. REIMER, Administrator, Appellant, v. WALTER P. MUSEL, Appellee.

No. 42941.

DECEMBER 17, 1935.

Jensen & Wieben, and Sullivan & Sullivan, for appellant.

M. W. Hyland, and Putnam, Putnam, Langdon & Fillmore, for appellee.

RICHARDS, J.—This is an action at law brought by plaintiff-administrator to recover damages on account of the death of his decedent. Plaintiff claims that his decedent lost his life in an automobile collision caused by defendant's negligence. At the conclusion of plaintiff's evidence, the court sustained defendant's motion for directed verdict on the ground of the insufficiency of the evidence, and directed a verdict for defendant and entered judgment thereon. Plaintiff filed motion for a new trial, which was overruled. From the judgment and rulings, plaintiff has appealed.

This appeal is from the second trial of the case. Upon the first trial there was a judgment for plaintiff from which defendant appealed to this court and there was a reversal. The opinion upon that appeal is found at 217 Iowa 377, 251 N. W. 863, 865. Upon the first trial the only specification of negligence,

submitted to the jury, was defendant's alleged failure to yield to plaintiff's decedent one-half of the traveled part of the highway. Likewise, on the second trial, the same specification of negligence, and none other, was relied on by plaintiff. In the first trial defendant filed a motion for a directed verdict, setting up, among other grounds, that plaintiff had failed to prove by a preponderance of the evidence any negligence on the part of defendant and that any negligence on the part of the defendant, if there was any, was the proximate cause of the accident. This was the only ground considered in the former opinion and the holding was that on this ground the motion for directed verdict should have been sustained. On the appeal before us, this same ground is one of those relied on by defendant in support of the directed verdict and judgment. We will proceed to consider such ground of defendant's motion for directed verdict, and whether, as claimed by plaintiff, the court erred in sustaining the motion on that ground.

The holding on the first appeal, of the insufficiency of the evidence to present a jury question on the issue of defendant's negligence, becomes the law of the case and necessarily controls a retrial on the same evidence. Disalvo v. Chicago, R. I. & P. Ry. Co., 203 Iowa 974, 213 N. W. 569. But if upon a retrial, after reversal, plaintiff has produced other or different evidence bearing on this question, which may be sufficient to carry the question to a jury, then on this second appeal the holding in the prior opinion of the insufficiency of the evidence is not conclusive. Eclipse Lumber Co. v. Davis, 201 Iowa 1283, 1284, 207 N. W. 238. Thus the necessity arises for a comparison of the evidence, upon which the prior opinion was based, with that introduced upon the second trial. While in a large measure the evidence upon the second trial was substantially the same as upon the first trial, plaintiff claims there was such additional evidence offered on the second trial that the question of defendant's negligence became a jury question.

One such matter of additional evidence pointed out by plaintiff is testimony that on the next morning after the accident there was observed a cut or furrow on the north shoulder of the paving, in direct or continuous line with and extending from the black mark on the paving, discussed in the prior opinion, to the east curb of the flume. We think this adds nothing of new substance to the evidence on which this court rendered its prior

opinion, for it will be noticed that in that opinion the court refers to the testimony that there was a black mark on the paving, beginning twenty feet east of the flume with its general direction off the pavement onto the shoulder toward the flume, and the opinion states that the mark ended at the east side of the concrete flume. Evidently in the first opinion the court accepted the testimony as establishing that the mark extended for twenty feet to the east side of the flume, and the testimony on the second trial that a cut or furrow was observed where the first opinion describes the location of the mark is merely cumulative.

There was new evidence on the second trial that on the next morning after the collision two fresh cuts were observed in the west curb of the flume, in direct line with a projection towards the west of the marks we have just referred to. In the prior opinion it was held that the evidence of the black mark on the paving extending to the east curb of the flume did not prove the location of the cars at the time of the accident. In the second trial the new evidence as to the marks on the west curb of the flume, in line with the black mark extended or projected, changes the fact situation only by tending to show that whatever car made the marks described and considered in the former opinion may have continued its course across the flume so as to make the marks on the west curb. It is true this additional evidence tends to bring the west end of the marks closer to the place where the Reimer car came to rest after the accident, to the extent of the distance across the flume. The former opinion described the distance from the end of the marks to the Reimer car as being sixteen feet. The evidence of the marks on the west curb on the second trial would tend to shorten this distance to six or eight feet as estimated by the witnesses. The question is whether this shortening of the possible distance between the end of the marks and the Reimer car materially changes the present fact situation from that on the first appeal, based on which it was said in the prior opinion that we could not see where the marks proved the location of the cars at the time of the collision. A careful reading of the former opinion compels a negative answer. The law of this case on this appeal is as it was announced in the prior opinion, wherein it is stated in substance that verdicts should not be based on mere theory or supposition, and negligence cannot be predicated upon presumption or inference from the facts that were shown, and that it was the

duty of the plaintiff to prove the cause of the accident, and to prove that the accident was due to the negligence of the defendant. It is apparent from the prior opinion that in applying these propositions of law to the evidence then in the record, the court reached its conclusion that the marks did not prove the location of the cars at the time of the collision, through consideration of matters in the evidence more fundamental than the question of the number of feet of distance between the ends of the marks and the Reimer car. These more fundamental considerations, found expressed in the former opinion, had to do with the lack of evidence connecting the marks with either the Reimer or the Musel car, the remoteness of the time of the seeing of the marks by the witnesses after the accident, the lack of evidence that the marks were not existent before the collision, the opportunity for the marks being made by other cars on this heavily traveled road including the Chekal car, and other matters set out in the opinion. It seems to us that these basic matters, in consideration of which the court in the first opinion applied the propositions of law above mentioned, appear in the evidence substantially on the second trial as they appeared on the first appeal, and the question of the distance between the ends of the marks and the Reimer car, standing at right angles to the direction of the marks, is comparatively incidental to the whole fact situation on which the former opinion was grounded. Regardless of whether the shorter distance may have added possible weight to one of plaintiff's theories, the theories were so speculative that the law announced in the first opinion that verdicts should not be based on mere theory or supposition, nor negligence predicated on presumption or inference from the facts that were shown is applicable to the fact situation on this appeal, as applied in the prior opinion. We conclude that the evidence of the marks on the west curb, though not a part of the evidence on the first appeal, is not such a material matter as to have made the question of defendant's alleged negligence a jury question.

Plaintiff claims that in the second trial there was a new and different showing as to the location of the broken glass on the pavement following the collision. Plaintiff claims that this new evidence shows that the broken glass was distributed along the north edge of the pavement and on the shoulder for some distance. Careful examination of the record does not disclose any material distinction between this testimony and that upon the

first trial, as it will be noted that in the former opinion the following statement is made: "There is testimony in the record that there was broken glass on the pavement and a great deal of it on the north side and north shoulder of the pavement. Of course, when these two cars collided, the glass was broken in both cars and scattered over the pavement. The glass in the Reimer car was broken, and it may have been that, when the Reimer car crossed the flume, as it no doubt did, glass dropped out of the Reimer car onto the north side of the pavement and the north shoulder." Under practically the same testimony as that on the second trial, the former opinion states that there is nothing in the record, from the location of the glass, that proves the location of the cars at the time of the collision. Plaintiff has not escaped by the alleged new evidence the foreclosure of this matter by reason of the finding in the former opinion. Another new matter of evidence relied on by appellant is testimony that the brakes of the Reimer car were found locked after the collision, showing, as plaintiff claims, a greater probability that the Reimer car made the marks that we have already discussed. The evidence as to the brakes being set is that the brake rods were bent in the locked position, and there is opinion evidence that a violent impact bending the brake rods at a time when the foot brake was being applied would leave the brakes applied after the foot of the driver was removed from the brake pedal. In connection with this evidence, plaintiff says that the black mark could have only been made by a locked wheel, resulting from a set brake, and if decedent was applying his brakes, the probability is that he locked his wheels and his car made the marks in question. In plaintiff's conclusion is contained the assumption that, if the brakes were applied, it was before the Reimer car reached the black mark, and the further assumption that the setting of the brakes locked the wheel, on which matter there is no evidence. We think the evidence of the locked wheels is merely a part of a theory or supposition or inference upon which, as stated in the prior opinion, verdicts cannot be based nor negligence predicated. As such, it does not so add to the plaintiff's case as to make defendant's negligence a jury question.

Appellant relies on new evidence consisting of testimony of witness Asmussen that he did not recall any cars stopping and parking on the north shoulder of the road east of the flume during an hour and three quarters he was at the place of the

collision, immediately after the accident. Appellant distinguishes the evidence in the second trial from that in the first on account of the opinion upon the first appeal containing the statement that the record shows beyond any question of a doubt that many other cars had driven up and pulled out on the shoulder. The testimony of the one witness, Asmussen, on the second trial that he did not recall any such incidents and that he was more or less assuming to direct the traffic is not of such weight as to overturn the finding in the prior opinion, the testimony of this witness not amounting to a denial of cars driving out on the shoulder, nor does his testimony cover any period of time excepting while he was present. Nor does it seem that the finding in the prior opinion that other cars drove out and parked on the shoulder was a matter of such substance or materiality in the prior opinion that we should now hold that there is evidence to be submitted to a jury as to the location of the cars at the time of the accident even if there was affirmative evidence that no cars did drive out and park on the north shoulder after the accident.

New evidence on the second trial was a photograph of the frame of the Reimer car, and appellant attaches importance thereto, as new and additional testimony as to defendant's negligence, on the ground that the photograph shows that the frame of the Reimer car was bent, showing that the car had been struck in its left front side. This appears to add nothing to the evidence submitted on the first trial and considered in the first opinion wherein the court stated that the record and the photographs showed that the left front corner of the Musel car was struck and also that the left front side of the Reimer car was struck. Nothing more was established by the photograph of the frame. In the prior opinion it was stated that there was nothing about the condition of the cars after the accident to indicate anything with regard to the location of the cars at the time of the collision, and under substantially the same testimony upon the second trial the prior opinion controls in that respect.

We have set out somewhat tediously a comparison of the evidence presented upon the two trials. We are satisfied that to the evidence on the second trial there is applicable the same conclusions as were arrived at in the prior opinion, based on the law as laid down in the first opinion.

Other grounds on which defendant relied to support the motion for a directed verdict, including the alleged lack of evi-

dence that plaintiff's decedent was guilty of no negligence contributing to the accident, in view of our above conclusions need not be considered. The court rightly sustained defendant's motion for a directed verdict and overruled plaintiff's motion for new trial and the case is affirmed.—Affirmed.

All Justices, except KINTZINGER, C. J., concur.