DEVERE MCCANN, Plaintiff, Appellee, v. H. R. DOWNEY, Defendant, Appellant; MELVIN DOWNEY et al., Defendants.

No. 45066.

1278

Doran & Doran and F. W. Ganoe, for plaintiff, appellee.

Hallagan, Fountain, Stewart & Cless and Mahoney & Mackey, for defendant Melvin Downey and H. R. Downey, defendant, appellant.

Dyer, Jordan & Dyer, for Ralph S. Phillips and Ralph S. Phillips, Jr., defendants.

MITCHELL, J.—H. R. Downey together with his family lives about 1 mile north of the city of Boone. He has three children, one of whom is Melvin, a boy of 15 years of age. The father was the owner of a single motor vehicle, which was kept at his home.

On the evening of October 27, 1938, Melvin asked his father if he might take the automobile to go to the Methodist church to attend choir practice, and then to attend the high school pep meeting. He was granted permission.

Melvin drove to town, and picked up his friend and schoolmate, John Doran. They drove to the Methodist church, but found the choir practice under way and did not stop. They then drove to the home of another schoolmate, Ruth Herrald, but she was not ready to go. So they drove to the home of still another schoolmate, Ethel Lickely and picked her up. They then picked up Beverly Peterson and returned to get Ruth Herrald. They then drove to the Methodist church where they picked up two more schoolmates. All seven of them drove to

the schoolhouse where the pep meeting was in progress. At the schoolhouse they met Ralph Phillips, who had his father's car. After spending some time at the schoolhouse, Ralph Phillips in his father's car, with a crowd of schoolmates started out, and young Downey with his school friends followed. Where they were going is not disclosed. They drove west on the paved highway down the hill and across the river bridge. Shortly after crossing the river bridge the Phillips car slackened its speed abruptly and the front end of the Downey car ran into the rear end of the Phillips car. As a result of this impact the Downey care was thrown to the left and into the path of the McCann automobile, which was headed in an easterly direction on the same highway. Devere McCann was injured and commenced this action against H. R. Downey and others for damages. There was a trial to a jury which resulted in a verdict for McCann and H. R. Downey has appealed.

It is not necessary to set out in detail the manner in which the accident happened, as the only question raised on this appeal is whether or not Melvin Downey was at the time of the collision driving his father's car with the consent and permission of the owner. Appellant claims that the lower court erred in not sustaining the motion to direct the verdict, the grounds of which are as follows:

"1. That the plaintiff has failed to sustain and discharge the burden of proving that the automobile involved in the collision referred to in this evidence and referred to as being the property of said defendant H. R. Downey was at the time and place of the collision which resulted in plaintiff's injuries, being operated by his son Melvin Downey with the consent, knowledge and permission of this moving defendant, the owner thereof.

"2. Comes now the defendant H. R. Downey, and as a separate and additional and second ground of his motion to direct, states that the evidence affirmatively and without dispute or contradiction shows that the car of the defendant H. R. Downey was not being driven with his consent and permission at the time and place of the accident, and that said evidence affirmatively shows that it was being driven in violation of his express orders and instructions and in violation of the limited consent extended to the son for the use of the car for a specific purpose on the evening in question."

■ It is conceded that the evidence must be viewed in its strongest reasonable aspect in favor of the appellee.

■ In the recent case of Wolfson v. Jewett, 210 Iowa 244, 255, 227 N. W. 608, 612, 230 N. W. 336, this court said:

"There is not much direct evidence in the record of consent given to Homer Jewett on the night of the accident. In fact, under the circumstances in this case, the plaintiff could not be expected to produce contradictory evidence of disinterested parties on the subject. The testimony of the defendants, however, against consent was not conclusive; for it could be rebutted by circumstances, taken together with the reasonable or unreasonable character of their testimony. As has been pointed out, some of the direct testimony of the Jewetts tends strongly to support the plaintiff's contention.

"In the case of Lange v. Bedell, 203 Iowa 1194, in commenting on a state of facts of the same general character, this court said: 'The jury had the right to weigh the testimony of the witnesses in the light of all the facts and circumstances disclosed by the evidence, together with the reasonable or unreasonable character of the testimony. They were not bound to accept the statements of the witnesses as conclusive because not contradicted by other direct evidence, when, in the very nature of things, contradiction thereby was impossible. A question of fact was presented for the jury.'

"The inference which arises from ownership places upon the owner the burden of showing that his automobile was not used with his knowledge or consent, expressed or implied.

" 'It is a wholesome rule that places upon the owner of a car the burden of establishing that the car was not being operated, at the time of an accident, by himself, or under his direction, if such be the fact.' "

■ With the rules of law set forth in the above-cited case in mind, let us look at this record.

H. R. Downey, with his wife and four minor children lived about a mile north of Boone. He was employed by the C. & N. W. R. R. Company. He had one automobile, a Chevrolet, which was kept at home. Melvin Downey was 15 years of age, he had learned to drive about 2 years before. He drove back and forth from school on numerous occasions. Melvin took the family to church in the car, drove to town and brought his

father home. He went to 4-H meetings and choir practice. Drove the car to football games at the high school. All of this was with the father's consent and knowledge. It was a family car, bought and used for that purpose. There were two sets of keys, one always at home. The automobile of today has become so commonplace in the average household that little thought or consideration is given to the question of who shall operate the automobile among the various members of the family, that are old enough to drive and know how to operate it.

Long ago this court sensed this situation and recognized in our law what has been known and commonly referred to from the very earliest days of the user of the automobile as the family purpose doctrine, or the family car doctrine.

There is testimony in the record that Melvin did not use the car without the permission of either his father or mother. On the evening that the accident occurred, Melvin asked his father if he could use the car to go to choir practice. His father said he could but that he must hurry home. Melvin then said to his father, that he wanted to go to the high school meeting also. His father inquired as to what was going on, and the boy told him there was being held a "pep meeting". The father told him he could use the car and go to the pep meeting but to hurry home. Both the father and mother knew that the boy was using the car first to go to choir practice and then to the pep meeting.

The pep meeting was being held on the eve of a football game. The purpose was to create enthusiasm, that the school deemed necessary for the purpose of winning the game on the following day. The meeting was not only held at the school building, but the students go out onto the streets cheering for the team. All of the passengers in the Downey and Phillips cars were students in the high school. Thus we find that this boy was using a family car, that he had been driving it for 2 years, that he had a limited driver's permit, that he had permission to drive it to school, to 4-H meetings, to football games. That the father had given him permission to pick up certain of his school chums and take them to and from school. In virtually all of the varied activities of this youth, he used the family car and his parents knew it. That on the evening of the accident he had permission from his father to drive the

car, to go to the church choir meeting, and then to the pep meeting. That the accident happened during the very time that the pep meeting was being held. In view of such a record, clearly it was a question for the jury to decide.

It necessarily follows that this case must be and it is affirmed.—Affirmed.

HAMILTON, C. J., and RICHARDS, SAGER, HALE, BLISS, and OLIVER, JJ., concur.