DEVERE McCANN, Appellant, v. IOWA MUTUAL LIABILITY INSURANCE COMPANY, Appellee.

No. 45747.

510

January 13, 1942.

Doran, Doran & Doran, for appellant.

Hallagan, Fountain, Steward & Cless and T. J. Mahoney, for appellee.

HALE, J.—This action was brought by Devere McCann, seeking to recover from defendant, Iowa Mutual Liability Insurance Company of Cedar Rapids, a judgment rendered in favor of plaintiff against H. R. Downey, in the district court of Boone county, on March 21, 1939, on a verdict of a jury for injuries sustained in an automobile accident. The damage suit was appealed to the supreme court by the insurance company, and affirmed. The company furnished and paid for the attorneys for the defendant Downey, and paid the costs of the appeal. This case was McCann v. Downey, 227 Iowa 1277, 290 N. W. 690.

This action was brought under section 9024-g1, Code of 1935, which is as follows:

"All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced his claim against such insurer had such insured paid such judgment."

The judgment against Downey, issuance of the policy, and the fact that it was in force in accordance with its terms at the time of the collision, were all admitted by the defendant company; but such company denied that the policy was in force as to the particular accident involved for the reason that at the time and place of the accident the insured automobile was being operated by Melvin Downey illegally as to age, thus excluding coverage, under an exclusion clause reading as follows: "(c) Under Coverages A, B, C and D, while the automobile is operated by any person under the age of 14 years, or by any person in violation of any state, federal or provincial law as to age ap-

plicable to such person, or to his occupation, or by any person in any prearranged race or competitive speed test.''

By an amendment to its answer defendant set up the defense that by appearing and defending in the original case resulting in a verdict, and by appealing from the adverse judgment rendered against its insured, it did not waive and was not estopped from denying liability under the policy, for the reason that prior to such defense it had entered into certain reservation-of-rights agreements. These are certain agreements and a supplemental agreement providing in general that the defendant company would appear in any damage case against the insured, with the understanding that the insurance company should not be deemed to have waived its disclaimer of liability nor to have waived any of the provisions, conditions, limitations, or exclusions in the policy of insurance, and further, that it would provide counsel, with the same understanding, such defense to be afforded without prior judicial determination of the question whether said accident in suit was covered by the terms of the policy, the question of policy coverage being in no way abandoned by its appearing in said suit or defending the same. These agreements, and supplemental agreement which provided for appeal, followed prior notice to the Downeys.

The policy in question covered a Chevrolet sedan, having been transferred from a Studebaker previously owned by H. R. Downey, who lived one-half mile north of the northeast city limits of Boone, and who had a fifteen-year-old son named Melvin. Melvin was, early in 1938, issued a school permit to drive an automobile, on application of his father. On October 27, 1938, Melvin obtained permission of his father to use the car, speaking about going to choir practice and to a ''pep'' meeting at the high school. Nothing was said, nor did the father know, that Melvin was going to drive west of the high school. The distance from the Downey home to the school building was about two and one-half miles. The boy drove to the Methodist church and attended choir practice; thence to the home of a companion. They both then went to the high school and stayed five or six minutes, but did not go into the building. They later met some young friends and proceeded in a southwesterly

direction on highway No. 30, across the Des Moines river, and the accident happened about two and three-quarter miles southwest of the high school, or a total distance from Melvin Downey's home of about five and one-quarter miles. The party in the Downey car followed another car occupied by other young people, this car being driven by one Phillips, and with no particular destination. All the occupants of the cars lived in Boone. The "pep" meeting was an informal gathering, attended by some but not all of the teachers. Students were not required to attend, nor were there any classes.

Following the collision a damage suit was brought by Devere McCann against H. R. Downey and others, resulting in a verdict in favor of the plaintiff. Appeal was then taken to the supreme court and the cause was affirmed on March 12, 1940. See McCann v. Downey [227 Iowa 1277, 290 N. W. 690], supra. The principal point of controversy in that case was as to whether or not the car was driven with the consent of the owner. The judgment against Downey is unpaid and execution was issued and returned unsatisfied. There is no dispute as to this fact and that throughout all the proceedings in the former case H. R. Downey carried a policy of insurance, and that the same law firms represented him in the trial of the original case as represent the defendant in this case, and that the insurance company furnished said lawyers and paid for their services.

The exclusion clause in the policy is heretofore set out. Coverage clause A, referred to therein, provides: "I. COVERAGE A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile." The policy also provides: "II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. It is further agreed that as respects insurance afforded by this policy under Coverages A and B the company shall (a) defend in his name and behalf any suit against the insured alleging such injury or destruction and

seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company; * * *."

I. Plaintiff's first assignment is that the court erred in sustaining the defendant's motion for a directed verdict, which motion was based on the theory that, under the exclusion clause heretofore set out, the operator, Melvin Downey, was violating the law applicable to the age of such driver. Plaintiff urges that if the driver was guilty of any violation of his limited permit it was as to use and not as to age, and that the court should have sustained plaintiff's motion for the same reason, and that the violation, if any, was as to restrictions, and was not a violation of the law as to age.

Section 205, chapter 134, Acts of the Forty-seventh General Assembly (now section 5013.01, Code of 1939) provides: "No person, except those hereinafter expressly exempted shall drive any motor vehicle upon a highway in this state unless such person has a valid license as an operator or chauffeur * * *. No person shall operate a motor vehicle as a chauffeur unless he holds a valid chauffeur's license." Section 208, chapter 134, Acts of the Forty-seventh General Assembly (now section 5013.04, Code of 1939) is as follows: "The department shall not issue any license hereunder: 1. To any person, as an operator, who is under the age of sixteen years, except that the department may issue a restricted license as provided in section 225 [section 5013.19, Code of 1939] to any person who is at least fourteen years of age; * * *." Section 224, chapter 134, Acts of the Forty-seventh General Assembly (now section 5013.18, Code of 1939) provides for authority for the department issuing the license to impose restrictions suitable to the licensee's driving ability, with respect to the type of vehicle and as to other matters "including licenses issued under section 5013.19, as the department may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee. * * *." Section 225, chapter 134, Acts of the Forty-seventh General Assembly (now section 5013.19, Code of 1939) is as

follows: "Upon a written request of a parent or guardian, a restricted license may be issued to any person between the ages of fourteen and sixteen years, to be valid only in going to and from school."

We have set out the applicable provisions of the Code, the first of which forbids driving by a person without a valid license; the second forbids the issuance of a license to a person under the age of sixteen years except as provided in Code section 5013.19. This last provision, in relation to minors, permits the issuing of a license to a minor only under certain conditions, and the license is valid under no other conditions—that is, it is not valid except in going to and from school. In other words, Melvin, not having attained the age of sixteen years, and not at the time of the accident being either going to or coming from school, was not a licensed operator, because he was not of an age at the time which would permit him to drive a car under any other conditions than in going to school and back to his home.

These statutory provisions were enacted for the safety of the public. As expressed by Justice Bliss, in Twogood v. American Farmers Ins. Assn., 229 Iowa 1133, 1143, 296 N. W. 239, 244, "* * * he made a practice of permitting this unlicensed, unauthorized minor (Code section 5013.01) to drive his car upon the highways, contrary to the statutes, and contrary to the rules of fair treatment to the travelling public. He was guilty of a misdemeanor if he knowingly did so (Code sections 5015.05 and 5036.01). By his conduct he exposed himself to the damage which he asks the appellant to pay."

It being recognized that driving by young children increases the hazards of the road, most policies of this nature now have the exclusion clause heretofore quoted, or one similar thereto. Under the undisputed facts in the case, the driving by Melvin in a totally different direction from any route which he might take from the school to his home would not be in compliance with the plain terms of the restricted license which he held, whether his father had knowledge thereof or not, and would not be in contravention of the facts in McCann v. Downey [227 Iowa 1277, 290 N. W. 690], supra. We cannot agree with the plaintiff that Melvin's use of the automobile at the time

and place in question, he being several miles from home and from the high school and in a different direction, was not a violation of the provision as to age but merely as to use, since the only permission granted by the license which he, being under the age when operators are entitled to drive, held, was to drive in a restricted place; that is, being under age, he had no license or authority to drive at the place where he was driving. That, as decided in the McCann case, supra, the father may have given him permission, does not authorize us to say that he was within the terms of his restricted license; therefore, as to age, he was driving without authority of law.

Since we hold that Melvin was at the time in violation of the law of Iowa as to age, there was, under the exclusion clause of the contract of insurance, no coverage under the policy. By the terms thereof the insured is excluded from the benefits of the policy when the automobile is operated "by any person in violation of any state, federal or provincial law as to age * * *." The holding in many states is that a violation of a restricted license in this respect prevents recovery thereon.

The form above given is a standard form of policy, and has been passed upon by several courts. It is true that there are decisions to the contrary, but we believe that the greater weight of authority is as we hold. As stated in Brown v. Travelers Ins. Co., 31 Cal. App. 2d 122, 87 P. 2d 377, there is a conflict of authority, but this clause is in the policy in controversy, and the case holds that the operator was driving the car in violation of the law as to age.

Many cases are cited, both by plaintiff and defendant, and it would be impossible within the limits of an opinion to attempt to review or analyze the various cases. The statutes of the several states also differ, but we are satisfied that the better, and probably the more nearly general, rule is announced by those cases holding that, under circumstances such as in this case, there is no coverage under the policy.

As to the effect of the first damage case, we will refer to that hereafter.

Under the rule which we hold to be the better one, there is cited by the defendant the case of Witzko v. Koenig, 224

Wis. 674, 678, 272 N. W. 864, 866, which dealt with a policy identical to the policy in suit. The court held there was no coverage, saying: "The contract of insurance provides that the respondent is not liable under its contract where the car is driven by a person in violation of law as to age. Under section 85.08 (1a), the permittee is not allowed to drive in the nighttime. Because of his age, under no circumstances could he secure a permit to drive in the nighttime. We must hold that at the time of the collision in question his driving was a clear violation of section 85.08 (1a), Stats., within the exclusion clause of the insurance policy." The opinion cites Hudak v. Union Indemnity Co., 108 Conn. 598, 143 A. 885; Weiss v. Preferred Acc. Ins. Co., 149 Misc. 911, 268 N. Y. S. 275; and other cases. See also, Shedd v. Automobile Ins. Co., 208 Ind. 621, 196 N. E. 227.

One of the most recent cases is Gulizia v. Royal Indemnity Co., 139 Neb. 832, 837, 299 N. W. 220, 222, where the policy provides, as it does here, that it did not cover any liability as to injuries caused while the car was being operated by any person in violation of the law as to age. The court says: "Where, as here, the express provisions of the policy clearly provide that the policy does not cover any liability as respects injuries while the car is being operated by any person in violation of law as to age, such provision, not being contrary to public policy or against any provisions of our statute, will be enforced as made, and the insured's car being driven by his son, fifteen years of age, for purposes other than attending school, and by leaving the route to and from his home and school by the nearest street or highway, was being driven in violation of our statute as to age, and such policy, during the time that the insured's car was being so driven, was suspended and no liability could attach to the insurer."

We have not undertaken to set out all the authorities bearing upon this question for the reasons heretofore given, but the foregoing cases, with others, clearly hold that the violation of law, under circumstances such as are found in this case, is a violation of the exclusion clause as to age and comes within the clause in the policy and prevents coverage by the policy

while the car is so used.  Courts have gone so far, under clauses similar to this one, as to hold that such a violation of law as to age may be a proximate cause, which determination, however, is not adopted by other jurisdictions and is expressly repudiated in various other cases.  Plaintiff does not contend that such would be the effect of the provision, but we mention this fact to show that there has been a diversity of opinion.

As a part of plaintiff's argument as to this division, he urges that an insurance policy must be construed most favorably to the insured, and, where a policy is susceptible to two constructions, that construction should be placed upon the policy which is most favorable to the insured.  This argument, as an abstract proposition, is not to be contradicted, but we do not think it will apply in this case.  It does not apply when the meaning is clear and the intention of the parties to the contract plain.  In the Gulizia case, supra, this statement is made at page 836 of 139 Neb., page 222 of 299 N. W.: ''Where the provisions of an insurance contract are not uncertain or ambiguous, but are clear and certain as to their meaning, and such provisions are not contrary to public policy or contrary to the provisions of our statutes, such policy will be enforced as made.''  See also Twogood v. American Farmers Ins. Assn. [229 Iowa 1133, 296 N. W. 239], supra, where it is said that the rule applies only when there is a real ambiguity in the language of the policy; citing Field v. Southern Surety Co., 211 Iowa 1239, 1243, 235 N. W. 571, 572.  See also U. S. Fidelity & Guaranty Co. v. Guenther, 281 U. S. 34, 50 S. Ct. 165, 74 L. Ed. 683, 72 A. L. R. 1064; Holland Supply Corp. v. State Farm Mut. Ins. Co., 166 Va. 331, 186 S. E. 56.  And this is the general rule.  Plaintiff cites in support of his position, Taylor v. United States Casualty Co., 269 N. Y. 360, 199 N. E. 620, 115 A. L. R. 822; Brock v. Travelers Ins. Co., 88 Conn. 308, 91 A. 279.  Also Des Moines Rug Cleaning Co. v. Automobile Underwriters, 215 Iowa 246, 245 N. W. 215, which case, however, was decided on a finding that the driver was not a chauffeur and therefore required no license.  Glade v. General Mut. Ins. Assn., 216 Iowa 622, 246 N. W. 794, was decided on the question of failure to cooperate with the insurer.  Venz v. State Auto. Ins. Assn., 217 Iowa 662, 251 N. W. 27, involved

the question of waiver with knowledge. Other cases from other jurisdictions hold as claimed, but in the large majority of the cases on the construction of this exclusion clause the general rule is as we hold. Nor do we think that the rule of ejusdem generis can apply, since, as stated, the car was being driven in violation of the exclusion clause as to age and not merely as to use.

II. The second assignment of error is that the trial court erred in overruling certain paragraphs of plaintiff's motion for a directed verdict, because, as plaintiff claims, the law of the case was definitely established in the original case of McCann v. Downey, supra, in that the district court jury and this court on appeal held that the minor son, Melvin Downey, was operating the car for school purposes on the night of the collision and the matter is res adjudicata; and for the further reason that the trial court erred in permitting the defendant to offer evidence on that point.

The main question in the trial of that case was as to whether or not the boy had permission from his father to use the car in the manner in which he did. The question in that case was as to whether or not the district court erred in not sustaining the motion to direct a verdict, the first ground of which motion was that the plaintiff had failed to sustain the burden of proving that the car was driven with the consent of the owner, and the second ground of the motion was that the evidence affirmatively showed that the car was driven in violation of the owner's orders. The holding of the court was that it was a question for the jury to decide. As between the insurance company and H. R. Downey, the question of coverage did not arise, and it could not have been decided in any event in that case. By securing judgment against Downey the plaintiff acquired only the rights which Downey himself had, since the injured person acquires no higher rights than the insured. Ambrose v. Indemnity Ins. Co., 124 N. J. L. 438, 12 A. 2d 693.

In the former case the defendant company was not a party to the suit, nor could it have been made one. Nor were the issues the same. We held in Ellis v. Bruce, 215 Iowa 308, 245 N. W. 320, that an action cannot be brought against the assured

and the insurance company, one being on contract and the other in tort. To the same effect, we have later, in Schulte v. Great Lakes Forwarding Corp., 228 Iowa 1012, 291 N. W. 158, determined the same question, and have held as in the Ellis case. See also Kellogg v. Bell, 222 Iowa 510, 268 N. W. 534; and see 85 A. L. R. 44, note. As is said in Daniel v. State Farm Mut. Ins. Co., 233 Mo. App. 1081, 1089, 130 S. W. 2d 244, 248: "It is incumbent on one asserting the plea of res judicata that he establish, by affirmative proof, that the cause of action involved in the former case, and the parties, are identical with those in the case in which the plea is asserted. The chief issue in this case could not have been an issue in the former case. There is no such identity, either of cause of action or of parties, shown here." Plaintiff cites our holding in In re Estate of Lyman, 227 Iowa 1191, 1195, 290 N. W. 537, 539, where we state as the governing rule (quoting from Linton v. Omaha Wholesale Produce Market House Co., 8 Cir., 218 F. 331, 334): "If the second action is upon the same claim or demand as was the first, and is between the same parties or their privies, the judgment in the first action, if rendered on the merits, constitutes an absolute bar to the prosecution of the second action." It is manifest that this rule does not apply here, since we hold that the question here involved was not, and could not have been, at issue in the former case.

The question of identity of attorneys, or the fact that the insurance company, under its contract, assumed the defense, would not be material on the question of prior adjudication; and Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N. W. 423, 65 A. L. R. 1125, cited by plaintiff, would not apply. Plaintiff also cites Reimer v. Musel, 220 Iowa 1095, 264 N. W. 47, where the holding on the first appeal, of insufficiency of evidence to present a jury question, becomes the law of the case and necessarily controls a retrial on the same evidence. As between the plaintiff and Downey this might be true, but as between the plaintiff and the company, which undertook the defense under the reservation hereinafter referred to, it could not apply. The first case was a question of negligence; the present is a question of coverage by the policy.

III. Plaintiff asserts that the defendant insurance company, by intermeddling in the case of McCann v. Downey [227 Iowa 1277, 290 N. W. 690], supra, and assuming the management and control of the trial and furnishing counsel, has waived and is now estopped from denying liability under its policy, and that the court erred in refusing to sustain that part of plaintiff's motion for a directed verdict which was to the effect that, by the actions of the defendants' attorneys in the McCann case, the defendant herein has waived and is now estopped from setting up a policy defense.

There is no question that the insurance company did, in the former trial, furnish counsel and pay expenses of the litigation. This it was permitted to do, under its agreement. To protect itself, the company gave notice to Downey and his son, and entered into a nonwaiver agreement. Where this is done, it is the general rule that no waiver or estoppel exists. Mann v. Employers' Liab. Assur. Corp., 123 Minn. 305, 143 N. W. 794; Mason-Henry Press v. Aetna Life Ins. Co., 211 N. Y. 489, 105 N. E. 826; Humphrey v. Polski, 161 Minn. 61, 200 N. W. 812. See also, Sargent Mfg. Co. v. Travelers' Ins. Co., 165 Mich. 87, 130 N. W. 211, 34 L. R. A., N. S., 491; Royle Mining Co. v. Fidelity & Casualty Co., 161 Mo. App. 185, 142 S. W. 438; Wigington v. Ocean Acc. & Guar. Corp., 120 Neb. 162, 231 N. W. 770. In all the above cases the courts have held that where a company protects itself by notice and by stipulation, as in the present case, no waiver or estoppel exists. There being no waiver under the stipulation as to Downey, plaintiff, as hereinbefore stated, could recover no more than Downey could. Nor was it necessary that the plaintiff in the former suit be a party to the nonwaiver agreement. He had no rights under the policy until the judgment was entered against Downey, nor until the judgment against Downey was returned unsatisfied, under the provisions of section 9024.1 of the 1939 Code, heretofore referred to. The statute itself sets out that in the event an execution on a judgment against the insured be returned unsatisfied, in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could

have enforced his claim against such insurer had such insured paid such judgment. Since, as we hold there could be no recovery by Downey under the terms of the policy, there could be none here and, Downey having agreed that there should be no waiver or estoppel, there could be none in favor of the plaintiff herein. Plaintiff had no rights or claims as against the insurance company other than those which he held under Downey, and, there being no waiver as to him, there could be none as to the plaintiff and he would not be a necessary party to the agreement or entitled to any notice thereof.

Plaintiff cites many cases in support of his argument that an insurance company which appears and defends on behalf of its insured waives and is estopped from denying liability under the policy. Space will not permit us to refer to all the cases cited, but we call attention to some of them. Kidd v. Minnesota Atlantic Transit Co., 261 Mich. 31, 245 N. W. 561, and Ziegler v. Ryan, 66 S. D. 491, 285 N. W. 875, do not support plaintiff's contention. In the latter case there was no disclaimer of liability. In Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790, there was no notice of nonliability.

Plaintiff cites, among other cases, Hoskins v. Hotel Randolph Co. [203 Iowa 1152, 211 N. W. 423], supra. We do not think that the ruling in that case is applicable here. An examination of the facts in that case shows the distinction. The elevator company was secondarily liable. It was vouched into the case and notified by the hotel company that it would claim indemnity for any sums which it might be compelled to pay to the plaintiff. The elevator company attempted to disclaim any liability, but this was refused by the hotel company, and the final reply of the elevator company was [203 Iowa 1152, 1156, 211 N. W. 423, 426]: " 'The record may show that we assume the defense under the law as to any liability that the law imposes, and no more.' " The opinion states at page 1160 of 203 Iowa, page 427 of 211 N. W.: "By the Otis Elevator Company's procurement, the Hotel Randolph Company was prevented from being heard through its own counsel upon a question that was vital to the Hotel Randolph Company's liability to plaintiff and its right to indemnity from the Otis Elevator Company."

Again the opinion states at page 1160 of 203 Iowa, page 427 of 211 N. W.: "By the notice to defend, the Otis Elevator Company was confronted with the possibility of serious consequences to itself. All questions litigated would have been res adjudicata between it and the Hotel Randolph Company, even though it had not undertaken the defense." This, we think, constitutes the principal difference between the facts of this case and the facts as they existed in the Hoskins case. No one could claim that the insurance company in this case is a joint tort-feasor, and, as we have heretofore stated, it could not have been a party to the original suit. So in the Lyman case [227 Iowa 1191, 290 N. W. 537], supra, cited by plaintiff, in both the equity and the probate actions, the claims were exactly the same, and the same person being superintendent of banking and receiver respectively in the two cases, and being so made receiver by law, the parties were the same in fact and the actions were identical. Plaintiff cites also Glade v. General Mut. Ins. Assn. [216 Iowa 622, 246 N. W. 794], supra. In that case the claim was made by the insurance company that the insured had refused to co-operate in protecting the rights of the insurer, but the court held that the insurance company was not prejudiced thereby. This was an action between the insured, who had been compelled to pay a judgment for damages against him, and the insuring company, and the issue was the failure of the insured to co-operate in the defense. We do not think this is in any way in line with the case here. There was no waiver pleaded, nor do we find that the defendant was obligated to conduct or pay for the defense as in the case at bar.

Plaintiff further cites in this connection, Des Moines Rug Cleaning Co. v. Automobile Underwriters [215 Iowa 246, 245 N. W. 215], supra. We have heretofore referred to this case. It was decided on the determination by the court that the employee was not a chauffeur. Peterson v. Maloney [181 Minn. 437, 232 N. W. 790], supra, is also cited. This is a case wherein the insurance company voluntarily assumed the defense, with no obligation or agreement so to do. This case has heretofore been referred to. There was not only no notice in this case, but there was no obligation for the company to appear in the damage case and defend.

524

We have not undertaken to review all the cases cited by the plaintiff, but have read the same and do not find anything therein which would tend to cause our conclusion to be other than it is, that, by appearing and assuming the expenses of the trial, after due notice of nonliability, there was no waiver or estoppel on the part of the company.

The rule in one case cited by the plaintiff—Bowen v. Cote, 1 Cir., N. H., 69 F. 2d 136—and which he urges should be adopted, we do not feel to be the true one. The general rule, and, it seems to us, the correct one, is as we have stated.

IV. Plaintiff's last assignment of error is that it was the duty of the trial court to submit to the jury the fact question whether the minor son was operating the automobile in going to or coming from school. As heretofore stated, both parties, at the conclusion of all the evidence, submitted motions for directed verdict. That of the defendant was sustained. As we read the record, the evidence was not contradicted and there was nothing to submit to the jury. It seems also to have been recognized by the plaintiff that the questions involved were purely legal ones. We think there were no fact questions such as would require the submission of the case, and that there was no error here. It was undisputed, as pointed out in the first division hereof, that Melvin Downey was driving in violation of the law as to age applicable to him, and the insured was therefore not within the coverage of the policy.

We have examined each of the assignments of error, with the arguments, and the authorities cited therein. It is our conclusion that the ruling of the district court in sustaining defendant's motion for a directed verdict was right, and the cause should be, and is, affirmed.—Affirmed.

BLISS, C. J., and STIGER, SAGER, MILLER, and WENNERSTRUM, JJ., concur.

GARFIELD, J., takes no part.