**HOOSIER CAS. CO. OF INDIANAPOLIS, IND. v. FOX et al.**

**Civ. A. No. 553.**

United States District Court
N. D. Iowa, E. D.
Jan. 17, 1952.

Glenn B. Beers and R. Bruce Hughes, of Reed & Beers, of Waterloo, Iowa, and Merle L. Royce, of Marshalltown, Iowa, for the plaintiff.

Charles J. Pickett, of Waterloo, Iowa, for the defendant Wayne R. Fox.

Donald G. Allbee, of McGinnis & Allbee, of Marshalltown, Iowa, and Fred G. Clark, Jr., of Clark & Clark, of Waterloo, Iowa, for the defendant Betty Kriegel Williamson, administratrix, of estate of Gerald E. Kriegel, deceased.

Jas. W. Hall and Don C. Swanson, of Hall, Galloway & Swanson, of Des Moines, Iowa, for the defendant Joe Zieons.

Alfred M. Pabst, of Albia, Iowa, for the defendant Ralph Eakins.

Kent Emery, Asst. Atty. Gen. of Iowa, for Pearl McMurry, Commissioner of Public Safety of Iowa.

GRAVEN, District Judge.

The plaintiff, Hoosier Casualty Company, is an Indiana insurance corporation which, among other insurance, writes automobile insurance. On June 19, 1950, at Marshalltown, Iowa, it issued and delivered to the defendant Wayne R. Fox a policy covering an automobile owned by him. The coverage related, in part, to bodily injury liability, property damage liability, and medical payments arising out of the operation of the automobile. The policy limits, as to bodily injury liability, were $20,000 per person and $70,000 per accident. The policy was for a term expiring June 19, 1951.

On January 28, 1951, the automobile was involved in a mishap near Beacon, Iowa. At the time it was being operated by the defendant Wayne R. Fox. Riding with him at the time were the defendant Joe Zieons, the defendant Ralph Eakins, and Gerald E. Kriegel. The last name of the defendant Ralph Eakins is incorrectly given in the complaint and in some of the other pleadings as Aikens. As a result of the mishap Gerald E. Kriegel and the defendants Joe Zieons and Ralph Eakins sustained serious injuries. Gerald E. Kriegel died as a result of his injuries. The defendant Betty Kriegel Williamson was by the District Court of Iowa appointed administratrix of his estate. The defendants Wayne R. Fox, Joe Zieons, Ralph Eakins, and Betty Kriegel Williamson, administratrix, are and were residents and citizens of the State of Iowa. Gerald E. Kriegel at the time of the mishap and at the time of his death was a resident of the State of Iowa. On September 21, 1951, the plaintiff, Hoosier Casualty Company, brought this action in this court asking for a declaratory judgment under the provisions of the Federal Declaratory Judgments Act, 28 U.S.C.A., §§ 2201, 2202. It named and joined as parties defendant Wayne R. Fox, Joe Zieons, Ralph Eakins, and Betty Kriegel Williamson, administratrix. Jurisdiction is based upon diversity of citzenship between the plaintiff and all of the defendants. It is not controverted that the situation of Joe Zieons, Ralph Eakins and Gerald E. Kriegel at the time of the mishap was such as to give them the status of guests under the so-called Iowa Guest Statute. That statute, which appears as Sec. 321.494, Code of Iowa, 1950, I.C.A., provides as follows: "The owner or operator of a motor vehicle

shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle." In its complaint the plaintiff alleges that the defendant Wayne R. Fox had procured the issuance of the automobile insurance policy by means of fraudulent statements and representations. It asks that it be declared that it is under no liability thereunder to any of the defendants. The defendant Wayne R. Fox filed an answer denying fraud on his part and asking in effect that it be held that the policy is enforceable according to its terms. The defendants Joe Zieons and Ralph Eakins filed answers setting up a number of defenses, certain of which will be referred to later. In addition, both of them filed counterclaims against the plaintiff. In their counterclaims they allege that Wayne R. Fox had been guilty of recklessness in the operation of his automobile within the purview of the Iowa Guest Statute. They ask recovery of the plaintiff for the damages sustained by them because of such recklessness on the part of Wayne R. Fox. They both also filed cross-claims against Wayne R. Fox on the same claims. The amount of damages claimed by the defendant Joe Zieons on his claim is the sum of $11,402.40. The amount of damages claimed by the defendant Ralph Eakins on his claim is the sum of $16,660. The defendant Betty Kriegel Williamson filed an answer in some respects similiar to the answers of the defendants Joe Zieons and Ralph Eakins. However, she did not and has not filed any counterclaim or cross-claim herein for damages for the death of Gerald E. Kriegel. As yet she has not brought any action on her claim. It appears that her claim would be in a very substantial amount. No action is pending in any other court involving the claims of the defendants Joe Zieons and Ralph Eakins. The applicable Iowa Statute of Limitations as to the claims of the defendants Joe Zieons, Ralph Eakins and Betty Kriegel Williamson, administratrix, is two years. Sec. 614.1(3), Code of Iowa, 1950, I.C.A. Subsequently, Pearl McMurry, Commissioner of Public Safety of Iowa, made application to intervene and file answer herein. That feature will be referred to later.

The plaintiff challenges the right of the defendants Joe Zieons and Ralph Eakins to counterclaim against it on the policy for the damages sustained by them because of the claimed recklessness of the defendant Wayne R. Fox. The defendant Wayne R. Fox challenges the right of the defendants Joe Zieons and Ralph Eakins to assert their cross-claims against him in this action. The plaintiff also challenges the sufficiency of certain of the defenses asserted in the answers of the defendants Wayne R. Fox, Joe Zieons, Ralph Eakins, and Pearl McMurry, Commissioner of Public Safety of Iowa.

In the present case there is presented the situation where an insurer seeks a declaration of non-liability on an automobile policy issued by it because of fraud on the part of the insured in its procurement and in which there have been joined as parties defendant, the insured, two persons injured by the alleged recklessness of the insured, and the personal representative of another person allegedly similarly injured, and in which the two living injured persons file counterclaims against the insurer and cross-claims against the insured for the damages sustained by them because of such alleged recklessness.

The policy in question contains the following provision in regard to coverage:

"Coverage 1—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

It also contains a provision providing that the insurer shall defend any suit against the insured alleging bodily injury as a result of the use of the automobile and seeking damages on account thereof. The policy also contains the following provision: ·

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."

Jurisdiction in this case being based upon diversity of citizenship, the doctrine of the case of Erie Railroad Company v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is governing.

The Iowa Code contains and for a long period has contained many statutes relating to the right of insurance companies to do business in this State, the type and kind of policies they may issue and as to rights and obligations thereunder. The present statutory provisions relating thereto are found in Title XX of the Code of Iowa, 1950, I.C. A. § 516.1 et seq. Sec. 516.1 of that title provides as follows: "All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced his claim against such insurer had such insured paid such judgment."

Chapter 516, and especially Sec. 516.1, has been considered by the Iowa Supreme Court in several cases. The provisions of that Section are not to be thwarted by policy provisions. Schmid v. Automobile Underwriters, 1932, 215 Iowa 170, 244 N.W. 729, 733, 85 A.L.R. 4. A person injured by the wrongful act of the insured is entitled to the benefits of that Section but he is also bound by its limitations. Ellis v. Bruce, 1932, 215 Iowa 308, 245 N.W. 320, 324. The policy in question comes within the scope of that Section. Under the provisions of that Section the injured person may not join the insured and his insurer. Ellis v. Bruce, supra. Under the provisions of that Section the recovery of a judgment and the return of execution unsatisfied are conditions precedent to the maintenance of an action by such injured person against the tort-feasor's insurer and until such conditions have been met such injured person has no rights against such insurer. McCann v. Iowa Mut. Liability Ins. Co., 1942, 231 Iowa 509, 1 N.W.2d 682, 689; Ellis v. Bruce, supra; See also International Indemnity Co. v. Steil, 8 Cir., 1929, 30 F.2d 654, 655 passing upon the same Section. It seems that the Iowa Supreme Court regards the matter of permitting or not permitting an injured person to bring a direct suit against the tort-feasor's insurer as being a matter of substantive law. Eggermont v. Central Surety & Insurance Corp., 1945, 236 Iowa 197, 17 N.W.2d 840. The matter of an injured person joining the insured tort-feasor and his insurer is closely intertwined with and related to the question of the maintenance of a direct action against the tort-feasor's insurer. On the matter of a direct suit against the insurer, see Annotations 85 A.L.R. 20, 106 A.L.R. 516. On the matter of joinder, see Annotations 7 A.L.R. 1003, 96 A.L.R. 356.

The new Iowa Rules of Civil Procedure, Code of Iowa, 1950, pp. 2339-2388, became effective July 4, 1943, 58 I.C.A. Those rules have the force and effect of statute. Hubbard v. Marsh, 1948, 239 Iowa 472, 32 N.W.2d 67, 68; Glatstein v. Grund, Iowa, 1952, 51 N.W.2d 162. Prior to their adoption the right of joinder of parties, remedies and causes of action was rather re-

stricted. In a number of cases decided during that period relating to joinder by an injured person of the tort-feasor and his insurer, stress was placed upon the existing rules of procedure as to joinder. The new Iowa Rules of Civil Procedure greatly liberalized the existing rules as to joinder. Rule 28 of the new rules contains the following liberalized provision: "An action heretofore cognizable only after another has been prosecuted to conclusion may be joined with the latter * * *." Rule 28 was adopted with a background of declared State policy and rules against direct suits by an injured person against the tort-feasor's insurer and against the joinder of the insured and his insurer. If Rule 28 had not contained any other provision than the provision just set forth, it might have been claimed that it constituted a change in such policy and rules. However, Rule 28 contains the following prohibitory provision: "But there shall be no joinder of an action against an indemnitor or insurer with one against the indemnified party, unless a statute so provides." Rule 28 is taken from Rule 18 of the Federal Rules of Civil Procedure, 28 U.S.C.A., but the Federal rule, unlike the Iowa rule, does not contain the prohibition just referred to. See Cook, Iowa Rules of Civil Procedure, annotated, pp. 83, 84, and 36 Iowa Law Review 120. It would seem that the prohibition inserted in Iowa Rule 28 was indicative of State intent that its established policy and rule in regard to direct actions by an injured person against a tort-feasor's insurer was not to be changed because of a liberalized rule of procedure, and that Rule 28 was to be integrated into and made consistent with such established policy and rule.

In the present case the two injured persons referred to have by their counterclaims brought direct actions against the insurer of the alleged tort-feasor and such actions have been joined with actions against the alleged tort-feasor. Such direct actions and joinder are contrary to the policy of the State of Iowa as declared by statute and a State rule of procedure having the effect of statute. Under the State statute the recovery of a judgment against the alleged tort-feasor and the return of execution thereon unsatisfied are conditions precedent to the maintenance of such direct actions.

The Federal Rules of Civil Procedure, adopted in 1938, greatly liberalized the federal practice as to joinder of parties, claims, and remedies and as to counterclaims and cross-claims. In the case of United States Fidelity & Guaranty Co. v. Janich, D.C. Cal. 1943, 3 F.R.D. 16, in a situation similar to that in the present case, it was held that under the Federal Rules of Civil Procedure an injured person could counterclaim against his tort-feasor's insurer, as the two living injured persons are attempting to do in this case. See 3 Moore's Federal Practice Par. 13.34, p. 93 (2d Ed. 1948).

It had been assumed by many members of the bench and bar that the adoption of the Federal Rules of Procedure would result in uniformity in the procedure of the federal courts sitting in the different states in both diversity and non-diversity cases. However, not long prior to their adoption a Mr. Tompkins took a walk along the right of way of the Erie Railroad Company and was hit by a car door projecting from a moving train. The mishap threw him into legal immortality and the law into a state of uncertainty, and, as it later developed, inflicted a serious pre-natal injury on the Federal Rules of Civil Procedure, then in a state of *en ventre sa mere*. Shortly prior to the adoption of the Federal Rules of Civil Procedure the United States Supreme Court handed down its decision in the case of Erie Railroad Company v. Tompkins, supra. While perhaps not fully realized at the time, the doctrine of that decision was to impair uniformity in federal procedure in diversity litigation. Federal trial courts sitting in cases where jurisdiction is based upon diversity of citizenship have hovering over them the "brooding omnipresence" of the Erie case. See Clark, State Law in The Federal Courts: The Brooding Omnipresence of Erie v. Tompkins, 55 Yale Law Journal 267, 269 (1946).

The scope and effect of the doctrine of the Erie case in diversity litigation has been considered by the United States Supreme Court in a number of cases. Ruhlin v. New York Life Insurance Co., 1938, 304 U.S. 202,

58 S.Ct. 860, 82 L.Ed. 1290; Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 382; Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719; Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. In the last three cases cited it was held that the doctrine of the Erie case required that the state law should govern as to matters which were specifically covered by the Federal Rules.

The question as to whether the right of an injured person to maintain a direct action against a tort-feasor's insurer is a matter of substance or procedure has arisen most frequently in connection with cases involving conflict of laws. As to conflict of laws as to the right of an injured person to maintain a direct action against the tort-feasor's insurer, see Annotation 16 A.L.R.2d 881; recent case comment on Anderson v. State Farm Mut. Automobile Ins. Co., 1946, 222 Minn. 428, 24 N.W.2d 836, in 31 Minnesota Law Review 492 (1947); Kertson v. Johnson, 1932, 185 Minn. 591, 242 N.W. 329, 85 A.L.R. 1; Lieberthal v. Glens Falls Indemnity Co., 1946, 316 Mich. 37, 24 N.W.2d 547; and Conflict of Laws in Automobile Insurance, by John P. Faude, p. 88, Proceedings of Section of Insurance Law of American Bar Association for 1950. As heretofore noted the Iowa Supreme Court apparently regards the matter of the right to maintain such suits as being one of substantive law. However, the present case is not a conflict of laws case, but is one having to do with the doctrine of the Erie case. In the case of Guaranty Trust Co. of New York v. York, supra, the Court stated, at page 109 of 326 U.S., at page 1470 of 65 S.Ct., that in applying the rule of the Erie case state court opinions characteriz-

ing certain matters as being substantive or procedural were immaterial. As to some of the problems presented by attempting to apply the "substantive-procedure test" in cases governed by the Erie case, see Tunks, Categorization and Federalism: "Substance" and "Procedure" After Erie Railroad v. Tompkins, 34 Illinois Law Review 271 (1939).

▆▆ It is the rationale of the decisions of the United States Supreme Court that a federal court in cases in which jurisdiction is based upon diversity of citizenship enforces state law and state policy. Angel v. Bullington, supra; Martineau v. City of St. Paul, 8 Cir., 1949, 172 F.2d 777, 780. It is also the rationale of such decisions that provisions of the Federal Rules of Civil Procedure must in such cases give way to such law and policy. Further, it is the rule that if a party could not have maintained a certain action in the local state court he cannot maintain such action in federal court in an action in which jurisdiction is based upon diversity of citizenship. Woods v. Interstate Realty Co., supra.

▆ It has been and is the Iowa policy and rule that an injured person may not join an action against a tort-feasor with one against his insurer. It also has been the long-standing Iowa policy declared by statute that such injured person cannot maintain a direct action against such insurer until he has met the conditions precedent of recovery of a judgment against the tort-feasor and the return of execution unsatisfied. To permit the two living injured persons in the present case to proceed as they have attempted to do, upon the ground that the Federal Rules of Civil Procedure permit them to do so, would be to permit such parties by means of such Rules to contravene state policy and state law. It seems clear that the United States Supreme Court would not permit that to be done.

Cases involving the matter of the effect of the doctrine of the Erie case in diversity litigation on the joinder of an insured tort-feasor and his insurer under the Federal Rules of Civil Procedure have not been numerous. In the cases of Jennings v.

Beach D.C.Mass.1940, 1 F.R.D. 442, and Pitcairn v. Rumsey, D.C.Mich.1940, 32 F. Supp. 146, it was held that where a state statute prohibited the joinder of the insured and the insurer, such joinder would not be permitted in federal court actions based upon diversity of citizenship. See also Jones v. U. S. Fidelity & Guaranty Co., D.C.Fla.1937, 19 F.Supp. 799. Compare Ford v. Glens Falls Indemnity Co., D.C.S.C. 1948, 80 F.Supp. 347, and Behling v. Rivers, D.C.S.C.1946, 74 F.Supp. 350. See 3 Moore's Federal Practice, Par. 18.08, p. 1826 (2d Ed. 1948). In the case of United States Fidelity & Guaranty Co. v. Janich, D.C.Cal.1943, 3 F.R.D. 16, heretofore referred to, in which a direct action by an injured person against the tort-feasor's insurer in a declaratory judgment action was allowed, the court had under consideration the effect of a "No action" clause in the policy and not a state statute, and it is indicated that the holding was in accord with the local state law.

In the present case the defendants Joe Zieons and Ralph Eakins are attempting, as against the plaintiff, to obtain the benefit of an Iowa statute and at the same time to reject its limitations. Such is contrary to Iowa law. Ellis v. Bruce, supra.

■ It is the holding of the Court that the defendants Joe Zieons and Ralph Eakins may not in this proceeding maintain their counterclaims against the plaintiff, Hoosier Casualty Company.

There is next to be considered the jurisdictional status of the cross-claims filed by the defendants Joe Zieons and Ralph Eakins against the defendant Wayne R. Fox, the alleged tort-feasor. There is diversity of citizenship between the plaintiff and all of the defendants, but there is no diversity of citizenship between the defendants Joe Zieons and Ralph Eakins, on the one hand, and the defendant Wayne R. Fox, on the other hand. The defendant Wayne R. Fox has moved to dismiss those cross-claims against him for lack of federal court jurisdiction. In the present case there is presented the situation where an insurer brings an action for a declaration of non-liability on an automobile insurance policy, joining as parties defendant the insured and the persons allegedly injured by the insured, and where two of the persons injured file cross-claims against the insured for such injuries, and where there is diversity of citizenship as between the insurer and all of the other parties but such diversity is lacking as between the insured and the injured persons. The question is whether federal court jurisdiction exists as to the cross-claims.

■ The Federal Declaratory Judgments Act, 28 U.S.C.A. §§ 2201 and 2202, received Presidential approval on June 14, 1934. The Act contains no provisions as to parties. It is authoritatively settled that where an insurance company asks for a declaration of non-liability or non-coverage on a policy similar to the one in question that injured persons having the same status as the claimants herein are proper parties defendant. See Maryland Cas. Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826. Such injured parties are proper parties defendant even though their claims against the insurer are contingent upon the recovery of a judgment against the insured. Franklin Life Insurance Co. v. Johnson, 10 Cir., 1946, 157 F.2d 653, 658. However, an injured person who has not obtained judgment is not a necessary party. Western Casualty & Surety Co. v. Beverforden, 8 Cir., 1937, 93 F.2d 166, 168. Thus, it appears that while the defendants Joe Zieons, Ralph Eakins and Betty Kriegel Williamson, Administratrix, are proper parties to the action, they were not necessary parties. The recovery of a judgment by an injured person either for or against the insured is not necessarily res judicata as to the liability of his insurer. See McCann v. Iowa Mut. Liability Ins. Co., 1942, 231 Iowa 509, 1 N.W.2d 682 and Stoll v. Hawkeye Casualty Co., 8 Cir., 1952, 193 F.2d 255. However, the fact that a certain person is a proper party defendant in a federal court action does not of itself give such court jurisdiction of claims that he may have against other parties to the action. Pettyjohn v. Pettyjohn, 8 Cir., 1951, 192 F.2d 322. The requisite jurisdictional amount is involved in the cross-claims of the defendants Joe Zieons and Ralph Ea-

kins against the defendant Wayne R. Fox. However, diversity of citizenship being lacking, if those claimants had originally brought actions against Wayne R. Fox on them in this Court they would have been dismissed for lack of jurisdiction. It is the claim of those claimants that because they are asserting their claims by way of cross-claims in this action their claims are of federal court cognizance.

■ The Federal Declaratory Judgments Act itself contains no provisions in regard to the matter of jurisdiction. It is authoritatively settled that the Act merely enlarges the range of remedies available in the federal courts and does not extend their jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194; Home Ins. Co. v. Trotter, 8 Cir., 1942, 130 F.2d 800, 803. The Act only provides a remedy where federal court jurisdiction already exists. California Ass'n of Employers v. Building & Constr. Trades Council, 9 Cir., 1949, 178 F.2d 175, 177. In the case of Clark v. Memolo, 1949, 85 U.S.App.D.C. 65, 174 F. 2d 978, 980, the Court states "It is well settled that the Declaratory Judgment Act does not confer or extend jurisdiction over an area not already covered, nor can it be used to give relief indirectly which could not be given directly." It has been frequently stated that the Act should not be used to drag into the federal courts the litigation of claims between citizens of the same states. Maryland Casualty Co. v. Boyle Constr. Co., 4 Cir., 1941, 123 F.2d 558, 565–566; Indemnity Ins. Co. v. Schriefer, 4 Cir., 1944, 142 F.2d 851, 854; Pennsylvania Casualty Co. v. Thornton, D. C.Ala. 1945, 61 F.Supp. 753, 756. See also, Indemnity Ins. Co. v. Kellas, 1 Cir., 1949, 173 F.2d 120, 128.

The Federal Declaratory Judgments Act itself contains no provisions as to the matter of pleading and practice thereunder. However, Rule 57 of the Federal Rules of Civil Procedure makes those rules applicable to declaratory judgment actions. Home Ins. Co. of New York v. Trotter, 8 Cir., 1942, 130 F.2d 800, 804. Rule 82 of those Rules provides that they shall not be construed to extend or limit the jurisdiction of federal courts.

■ It is the claim of the defendants Joe Zieons and Ralph Eakins that in the present case their cross-claims are of federal court cognizance under the ancillary jurisdiction of this Court. The federal courts have always deemed that their statutory jurisdiction is implemented by an ancillary jurisdiction lacking express statutory authorization. Such jurisdiction is based upon the theory that such ancillary jurisdiction is essential to the independence and self-sufficiency of the federal courts. For an excellent discussion of these matters, see Silberg, Ancillary Jurisdiction In The Federal Courts, 12 J.Air L. 288 (1941), quoted in Forrester, Federal Jurisdiction and Procedure (1950) p. 291. Examples of the earlier exercise of ancillary jurisdiction are found in Brun v. Mann, 8 Cir., 1906, 151 F. 145, 150; Loy v. Alston, 8 Cir., 1909, 172 F. 90, 94–95. Prior to the adoption of the Federal Rules of Civil Procedure the federal courts tended to regard their ancillary jurisdiction as being somewhat limited in scope and inelastic in character. See, e. g., Campbell v. Golden Cycle Mining Co., 8 Cir., 1905, 141 F. 610. See also Forrester, supra, p. 297.

The courts have never favored the piecemeal disposition of litigation. Prior to the adoption of the Federal Rules of Civil Procedure the existing procedure tended to be restrictive as to the inclusion of parties and claims in one action. Therefore, the matter of piecemeal disposition of litigation arose rather infrequently. Following the adoption of the Federal Rules of Civil Procedure, with their liberal provisions as to joinder of parties and claims, the federal courts in many cases found themselves confronted with numerous parties who were asserting various and conflicting claims. Such situations caused the matter of the piecemeal disposition of litigation to become one of pressing and practical importance. With numerous parties and numerous claims being immediately before courts in the same action there was the natural wish and desire on the part of such courts to dispose of the entire litigation in the same proceeding. Because

of such situations and such desire, the federal courts have, since the adoption of the Federal Rules of Civil Procedure, frequently examined and re-examined the scope and extent of their ancillary jurisdiction. Such examination and re-examination disclosed to many of such courts that their ancillary jurisdiction was much broader and much more elastic than it had previously been understood to be. Such disclosure fitted in very pleasingly with the policy of the courts against the piecemeal disposition of litigation. In some cases where an apparently broad scope was given to the ancillary jurisdiction of federal courts, the undesirability of piecemeal disposition of litigation was given considerable stress. See, e. g., United States Fidelity & Guaranty Co. v. Janich, D.C.Cal. 1943, 3 F.R.D. 16, 18.

While, as heretofore noted, the Federal Rules of Civil Procedure expressly provide that they are not to be construed as extending federal court jurisdiction, it seems evident that a number of those Rules have been especially productive of questions having to do with the nature and extent of the ancillary jurisdiction of the federal courts. Such of those Rules as seem to be pertinent to the consideration of the jurisdictional question presented in the instant case will next be considered. Rule 13(g) under which the cross-claims in question were filed provides as follows: "Cross-Claim Against Co-Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

Rule 13 also contains provisions in regard to compulsory and permissive counterclaims, the relevancy of which will be later referred to.

Rule 13(a) provides in part as follows: "Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *."

Rule 13(b) provides as follows: "Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Under earlier practice counterclaims and cross-claims were all lumped together as cross-bills. 3 Moore's Federal Practice, Par. 13.34, p. 93 (2d Ed.1948). However, Rules 13 and 14 of the Federal Rules of Civil Procedure distinguish between them.

It is a well settled rule that a compulsory counterclaim need not have a ground for federal court jurisdiction independent of that of the main claim but that a permissive counterclaim must have such independent ground. 3 Ohlinger's Federal Practice, pp. 249, 250; 3 Moore's Federal Practice, Par. 13.19, p. 53 (2d Ed. 1948). See Home Ins. Co. v. Trotter, 8 Cir., 1942, 130 F.2d 800. The theory of the rule is that a compulsory counterclaim is ancillary to the main claim while a permissive counterclaim is not. Since the test of a compulsory counterclaim is whether or not it arises "out of the transaction or occurrence" that is the subject matter of the main claim, it is evident that any claim which arises out of the transaction or occurrence that is the subject matter of the main claim is regarded by the courts as being ancillary to the main claim and will be supported for federal court jurisdictional purposes by federal court jurisdiction of the main claim. There are no compulsory cross-claims. Rule 13(g), like Rule 13(b), relating to permissive counterclaims, uses the word "may," while Rule 13(a), relating to compulsory counterclaims, uses the word "shall." However, the fact that cross-claims are permissive in character does not prevent them from being ancillary to the main claim. If they "arise out of the transaction or occurrence that is the subject matter" of the main claim, they are supported for federal court

jurisdictional purposes by federal court jurisdiction of the main claim. Coastal Air Lines v. Dockery, 8 Cir., 1950, 180 F.2d 874, 877. See also Connecticut Indemnity Co. v. Lee, 1 Cir., 1948, 168 F.2d 420, and 3 Moore's Federal Practice, Pars. 13.18 and 13.36, pp. 48, 97 (2d Ed.1948). There is not involved in the present case the last sentence of Rule 13(g) providing for cross-claims on claims against a co-party "whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

■■■■ The Federal Declaratory Judgments Act being of fairly recent origin, there has been little judicial consideration as to what "transaction or occurrence" constitutes the "subject matter" of the claim of an insurer seeking a declaration of non-liability based upon fraud on the part of the insured. The words "occurrence," "transaction," and "subject matter" are words with flexible meanings. See Cyclopedia of Federal Procedure (3d Ed.1951) Sec. 16.11, p. 19. It would seem that their meaning as used therein cannot be satisfactorily determined in a semantic vacuum. It seems clear that as used therein the words have to do with the relationship between two or more claims. It is believed that such relationship should be determined by means of objective criteria. It would seem that the nature and character of the claims asserted and the proof in support of such claims would constitute objective criteria. Declaratory relief is *sui generis*. United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 1939, 102 F.2d 288, 290. A proceeding for such relief is neither wholly a suit in equity nor an action at law. Home Ins. Co. v. Trotter, 8 Cir., 1942, 130 F.2d 800, 803. Issues may be presented which are cognizable either at law or in equity. Developments in the Law—Declaratory Judgments—1941–1949, 62 Harvard Law Review 787, 835 (1949). An action for declaration of non-liability based on fraud in the procurement of the policy "presents a claim which might support either a legal defense to an action on the policy or an equitable bill to cancel the policy." *Ibid.* See also, Piedmont Fire

Ins. Co. v. Aaron, 4 Cir., 1943, 138 F.2d 732, certiorari denied, 1944, 321 U.S. 789, 64 S.Ct. 789, 88 L.Ed. 1079. In the present case the claims of the cross-claimants against the insured are actions at law in tort. The occurrence upon which their claims are based was the accident resulting from the alleged recklessness of the insured. The claim of the insurer is, in substance, an action in equity to cancel a contract *ab initio*. See Anderson, Declaratory Judgments, Sec. 323, p. 778 (1st Ed.1940). The transaction upon which that claim is based was the transaction between the insurer and the insured which resulted in the claimed fraudulent procurement of the insurance contract. The proof of the parties on the declaratory claim would not be connected with or related to the proof of the parties in connection with their cross-claims. The evidence in the former will relate to the transaction whereby the insured allegedly fraudulently procured the execution of the insurance contract. The evidence in the latter will relate to the occurrence of the automobile mishap, and the injuries sustained by the cross-claimants as a result thereof. It is difficult to see how the claims could be regarded as arising out of the same occurrence or transaction when the evidence as to the one would have no factual relation to the evidence in the other. It would seem that on the basis of objective criteria the claims of the cross-claimants against Wayne R. Fox cannot be considered as having arisen out of the subject matter of the original declaratory claim. In Cyclopedia of Federal Procedure (3d Ed.1951) Sec. 16.11, p. 20, the following statement appears: "With further reference to the meaning of 'transaction or occurrence' as used in Rule 13(a), it has been said that the terms include the facts and circumstances out of which a claim may arise, and whether two claims arise out of the same transaction or occurrence depends in part on whether the same evidence would support or refute both." In the case of United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 1939, 102 F.2d 288, at page 293, in which the court had under consideration a problem under the Federal

Declaratory Judgments Act not involved in the present case, the following appears: " 'The liability under the policy and the liability for negligence are indeed two separate transactions. * * *' Borchard, Declaratory Judgments and Insurance Litigation, above cited, 15." See also Associated Indemnity Corporation v. Davis, D. C.Pa.1942, 45 F.Supp. 118, 121.

Some of the cases having to do with federal court jurisdiction of cross-claims will next be considered. In the case of Collier v. Harvey, 10 Cir., 1949, 179 F.2d 664, it was held by a divided court that ancillary federal court jurisdiction existed as to a declaratory cross-claim brought by the insured against the injured person. The cross-claim in that case was strictly declaratory in nature and was closely related factually to the insurer's declaratory claim. The insurer in that case did not seek to avoid the policy *ab initio*. In the case of United States Fidelity & Guaranty Co. v. Janich, D.C.Cal.1943, 3 F.R.D. 16, in a situation similar to that in the present case, the court held that federal court jurisdiction existed as to similar cross-claims. There was limited discussion of the jurisdictional question. The basis of the court's ruling was the following, at page 19 of 3 F.R.D.: "A similar question of jurisdiction was examined by this court in Golconda Petroleum Corp. v. Petrol Corporation [D.C.], 46 F.Supp. 23, 25. 'Jurisdiction of the federal courts depends upon the state of the record at the time the action was brought and having obtained jurisdiction, it cannot be ousted.' See also Southern Pacific Co. v. Haight, 9 Cir., 126 F.2d 900." The cases referred to by the court did not involve the question of jurisdiction as to cross-claims.

In the recent case of Pettyjohn v. Pettyjohn, 1951, 192 F.2d 322, the United States Court of Appeals for the Eighth Circuit had before it a situation where the matter of federal court jurisdiction of cross-claims was directly involved. The United States had brought two actions under the provisions of 26 U.S.C.A. § 3678 to enforce liens for taxes against certain real and personal property joining as parties defendant different claimants to the property. Some of the claimants as between themselves made conflicting claims to the property which they asserted by means of cross-claims. The claimants were all citizens of the same state. A decree was entered in favor of the United States imposing liens upon the real property involved. The trial court then proceeded to try out the conflicting claims of the claimants as to the property as to which the United States had asserted liens. On appeal the trial court was directed to dismiss the cross-claims for want of jurisdiction.

The Court of Appeals held that the grant by Congress to federal courts of jurisdiction of actions by the United States to enforce tax liens did not carry with it jurisdiction of cross-claims between co-citizen rival claimants to the property as to which the United States asserted liens. The Court stated at page 326 of 192 F.2d: "We can not suppose that by the provisions of section 3678 Congress intended to confer on Federal district courts a jurisdiction over controversies wholly between citizens of the same State, a jurisdiction which the Constitution, Article 3, Section 2, by failing to grant to the courts of the United States has denied." The Court further stated at page 326 of 192 F.2d: "Nor is there any merit in appellants' suggestion that jurisdiction of the District Court may be found in Rule 13(g) of the Rules of Civil Procedure, 28 U.S.C. The Rules of Civil Procedure are wholly procedural and neither extend nor limit the established jurisdiction of the district courts. Rule 82; Coastal Air Lines, Inc., v. Dockery, 8 Cir., 180 F.2d 874, 877; Hagan v. Central Avenue Dairy Inc., 9 Cir., 180 F.2d 502, 17 A.L.R.2d 735."

■ It seems, therefore, that the fact that a federal court has jurisdiction of the subject matter of an action and of the persons who are proper defendants to such action does not of itself extend jurisdiction to cross-claims, and this even though the cross-claims do have a general relevancy to the subject matter of the main action. It seems further, that in order for such cross-claims to come within the ancillary jurisdiction of a federal court they must have a particular relation to the subject

matter of the main action, and that the requisite relation exists only when such cross-claims "arise out of the transaction or occurrence that is the subject matter" of the main action.

As heretofore noted, the cross-claims of the defendants Joe Zieons and Ralph Eakins against the defendant Wayne R. Fox cannot be considered as having arisen out of the transaction or occurrence which is the subject matter of the original declaratory claim. Therefore, federal jurisdiction as to their cross-claims cannot be supported by federal court jurisdiction of the original declaratory claim.

It is the holding of the Court that federal court jurisdiction is lacking as to the cross-claims of the defendants Joe Zieons and Ralph Eakins against the defendant Wayne R. Fox.

The real storm center of this litigation at this stage has to do with questions arising under the Iowa Motor Vehicle Financial and Safety Responsibility Act. Chapter 321A, Code of Iowa 1950, I.C.A. Unless otherwise indicated, all references to the Iowa Code are to the Iowa Code of 1950, I.C.A. Under the provisions of that Act the Commissioner of Public Safety has authority to administer it and enforce the provisions thereof. Pearl McMurry, Commissioner of Public Safety of Iowa, made application to intervene and file answer to the plaintiff's complaint. His application was granted and he filed his answer herein. It is his claim that certain questions presented in this case are of importance in connection with the administration and enforcement of the provisions of the Act. It is his claim, and the claim of the defendants Joe Zieons and Ralph Eakins, that by reason of certain provisions in the Act the plaintiff, Hoosier Casualty Company, cannot now avoid the policy in question. Such claim requires a consideration of the provisions of that Act.

The Act was passed in 1947, and appears as Chapter 172 of the Acts of the 52d General Assembly. It follows the model bill sponsored and recommended by the National Committee on Uniform Traffic Laws and Ordinances, which model bill has been endorsed by the National Conference of Commissioners on Uniform State Laws and by the Council on State Government. For a thorough discussion of the history, objectives, and provisions of the Act, see Note 33 Iowa Law Review 522–38 (1948).

The Act was divided into six portions by the Legislature. The headings given to each portion are as follows: "Words and Phrases Defined", "Administration of Act", "Security Following Accident", "Proof of Financial Responsibility for the Future", "Violation of Provisions of Act—Penalties", and "General Provisions."

The distinction between the security and proof sections is very important, and it is significant that the Legislature very carefully separated those two sections. In 33 Iowa Law Review 522, 527 (1948), it is stated: "An appreciation of the distinction between security and proof of financial responsibility is basic to an understanding of the Iowa or similar acts. Security, *i. e.*, the furnishing of collateral of one type or another to cover liability of the person secured for damages in the accident which brought the law into play, is retrospective in operation. Proof of financial responsibility, * * * is prospective in operation and refers to evidence of ability to meet possible judgments arising out of the future ownership, maintenance, or operation of motor vehicles."

*The Security Provisions.* Code of Iowa, Sec. 321A.5(1) provides that: "The commissioner shall, immediately or within sixty (60) days after the receipt of a report of a motor-vehicle accident within this state which has resulted in bodily injury or death or damage to the property of any one person in excess of fifty dollars ($50), suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, * * * unless such operator or owner of both shall deposit security in a sum which shall be sufficient in the judgment of the commissioner to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such operator or owner * * *." Sec. 321A.5(2) provides that the security requirement "shall not apply"

to owners or operators with respect to whom an "automobile liability policy" was in effect at the time of the accident. The policy, to entitle the insured to exemption from the security provision of the Act, must have maximum coverage limitations of not less than $5,000 for bodily injury or death of one person, $10,000 for bodily injury or death of two or more persons, and $1,000 for property damage. The final paragraph of Sec. 321A.5(3) provides: "Upon receipt of notice of such accident, the insurance carrier or surety carrier which issued such policy or bond shall furnish for filing with the commissioner a written notice that such policy or bond was in effect at the time of such accident." This written notice of policy in effect is made in Iowa on a form designated as an "SR 21", and it is the effect of filing such a notice on the insurance carrier's right to avoid the policy which is the issue the Commissioner raises in his answer. It appears that the "SR" is an abbreviation for Safety Responsibility.

*The Proof Provisions.* With certain exceptions not material here, the Commissioner must suspend the license and registration of any person who fails within sixty days to satisfy a judgment arising out of a motor vehicle accident. Secs. 321A.12, 321A.13, Code of Iowa. Such suspension continues until the judgment is paid (as defined in Sec. 321A.15) *and* until the person furnishes proof of future financial responsibility. Sec. 321A.14, Code of Iowa. Such proof is also required prior to the reinstatement of a license suspended because the person has been convicted of certain crimes. Sec. 321A.17, Code of Iowa.

Proof of future responsibility can be made by an insurance carrier's filing a "certificate" certifying that there is in effect a "motor-vehicle liability policy" for the benefit of the person required to furnish proof. Secs. 321A.18, 321A.19, Code of Iowa. If proof is made in this manner, the insurance must be a "motor-vehicle liability policy" as defined in Sec. 321A.21, Code of Iowa. That Section points out certain provisions such a policy must contain, and makes it subject to certain provisions whether expressed or not, the first of which

reads as follows: "The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor-vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy." Sec. 321A.21(6)(a), Code of Iowa. Except by substitution of another such policy, a certified motor vehicle liability policy cannot be canceled by an insurance carrier unless it has given 10 days' notice of the same to the Commissioner. Sec. 321A.22, Code of Iowa.

On June 19, 1950, the plaintiff issued the policy in question in the present case to Wayne R. Fox. Paragraph E, on page 3, of the policy provides as follows: "Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

On January 28, 1951, the afore-mentioned accident occurred, in which Joe Zieons and Ralph Eakins were injured, and which resulted in the death of Gerald E. Kriegel.

Bodily injuries having been sustained in the crash, Wayne R. Fox either had to post security or show exemption from the security requirements of the Act in order to escape having his operator's license and motor vehicle registration suspended. On February 5, 1951, plaintiff's representative, William Quinn, filled in an "SR 21" form, describing the date and place of the ac-

cident and the vehicle involved. The writing inserted in the form states that the vehicle was operated and owned by Wayne R. Fox. The policy number, Wayne R. Fox' name and address, and "x" marks opposite the words "Yes" were then filled into blanks on the form, making it read as follows:

"The company signatory hereto gives Notice that its policy numbered......4852.... issued to ........Wayne R. Fox,........
Name

Eddyville, Iowa......is a liability policy as
Address

defined in the Iowa Motor Vehicle Financial and Safety Responsibility Act affording limits of $5,000–$10,000 bodily injury and $1,000 property damage, which policy was in effect on the date of the above described accident.

"Does this policy apply to the above owner?

"Yes (x) No ( )

"Does this policy apply to the above operator?

"Yes (x) No ( )"

The form is signed for the Hoosier Casualty Company by William Quinn. The form was filed on February 6, 1951, with the Department of Public Safety of Iowa.

On September 21, 1951, plaintiff filed herein its suit for a declaration of nonliability under the policy based upon the alleged fraud of Wayne R. Fox in its procurement. The fraud charged is that Wayne R. Fox falsely represented that no automobile policy issued to him had ever been canceled and that his operator's license had never been revoked. The Commissioner challenges the present right of the plaintiff to avoid the policy. The Commissioner contends that the plaintiff has foreclosed litigation on this point by filing the "SR 21" form and failing to withdraw it within 50 days after the accident. He asks that "the Court declare that it is the legal effect of the provisions of section 321A.5, Code of Iowa 1950, I.C.A., that a certification that the owner and/or operator of a motor vehicle involved in an accident is exempt from the requirement of the deposit of security under the provisions

of sub-paragraph a of paragraph 2 of said section, cannot be repudiated or denied after such representation and certification has become operative, to preserve motor vehicle driving and registration privileges, and that an insurer so certifying cannot thereafter deny that liability exists against such insurer under the policy so certified." In support of this request he cites two rules adopted by the Iowa Department of Public Safety on August 4, 1949. These rules provide:

"1. An SR–21 Form filing once made may not be withdrawn by an insurance carrier after the 50th day following the accident for which it is filed; * * *" (a proviso which has recently been added to Rule 1, having to do with filings after the 50 day period, is conceded to have nothing to do with this case).

"2. It shall be the responsibility of each insurance carrier to check all copies of SR–21 Forms returned to it by the department, and if the signature appearing on a particular SR–21 Form is not that of a person authorized to sign such form on behalf of the insurance carrier designated as signatory thereon, or if such insurance carrier desires to withdraw or reject such SR–21 form filing, such insurance carrier shall promptly notify the department to that effect."

It will be noted that Sec. 321A.5, requiring the Commissioner to suspend the license or registration of persons involved in an accident of the type designated therein "immediately or within sixty (60) days" after receipt of the report of an accident gives the Commissioner a limited discretion as to the time security or exemption must be shown. He has apparently selected 50 days as the time allowable. Thus an "SR 21" notice becomes effective to maintain operating or registration privileges after 50 days have passed following the accident. Reference to the "50 day period" hereafter will be to the period the Commissioner has decided upon for a showing of security or exemption. Reference to the "60 day period" will be to the time set for the Commissioner's action under the statute.

The Commissioner does not contend that the policy in question is a "required" policy as to which "The liability of the insurance carrier * * * shall become absolute" and as to which "no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy", as provided in Sec. 321A.21(6)(a), Code of Iowa. It is clear that it is not such a policy.

■ The kind of policy referred to in Sec. 321A.21(6)(a) is a "motor-vehicle liability policy" which has been certified as proof of future financial responsibility. The words "motor-vehicle liability policy" are used in the Act as a term of art, having reference only to policies *certified* as *proof* under the proof section of the Act. This is to distinguish such a policy from the "automobile liability policy" which can exempt an operator or owner from furnishing security under Sec. 321A.5 of the Act.

The policy in question was not a "motor-vehicle liability policy", as the term is used in the Act. No allegation is made that Wayne R. Fox has ever had his license suspended for failure to satisfy a motor vehicle accident judgment. Some claim is made that his operator's license has been suspended or revoked in the past because of criminal convictions, but it does not appear that the Commissioner has ever required him to furnish proof prior to reinstatement of his license. The proof provisions of the Act are not automatic. No one has to furnish proof until the Commissioner tells him he must do so if he wants his operator's license or registration reinstated. Compare United States Casualty Co. v. Timmerman, 1935, 118 N.J.Eq. 563, 180 A. 629, and Rasinski v. Metropolitan Casualty Ins. Co., 1937, 117 N.J.L. 490, 189 A. 373, where New Jersey courts treat a motorist's liability policy as being subject to the proof requirements of the New Jersey Act then in effect if the insured had previously had a $100 accident, whether or not the Commissioner had acted.

The "SR 21" form filed by the plaintiff was not a *certificate* of *proof* of financial responsibility, but was rather a *notice of policy in effect,* as shown on its face, and

as specified in Sec. 321A.5, dealing with the security requirements. Nor does Paragraph E on page 3 of the policy, quoted supra, transform the policy into a "proof" policy, which the insurer cannot avoid. It merely says that the policy shall comply with the provisions of the Act; and Sec. 321A.21(6)(a) of the Act does not purport to take away policy defenses as to any policies other than those certified as proof of future financial responsibility. Paragraph E does contemplate that the policy *can* be used as a "proof policy" *if certified* as such, for it gives the insurance company a right of indemnity against the insured for any payment made by the company which would not have been made except for the agreement contained in the paragraph. This is permitted under Sec. 321A.21(8), in the proof portion of the Act.

Plaintiff cites a number of cases for the proposition that policy defenses can be raised or the policy avoided if the policy is not one certified as proof of financial responsibility: Farm Bureau Mutual Automobile Ins. Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793, certiorari denied Beverage v. Farm Bureau Mut. Auto Ins. Co., 1950, 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339; Sutton v. Hawkeye Casualty Co., 6 Cir., 1943, 138 F.2d 781, 786; Cohen v. Metropolitan Casualty Ins. Co. of N. Y., 1931, 233 App.Div. 340, 252 N.Y.S. 841; Rasinski v. Metropolitan Casualty Ins. Co., 1937, 117 N.J.L. 490, 189 A. 373; Anderson v. American Automobile Ins. Co., 1930, 50 R. I. 502, 149 A. 797; Hill v. Standard Mutual Casualty Co., 7 Cir., 1940, 110 F.2d 1001; Travelers Ins. Co. v. Boyd, 1949, 312 Ky. 527, 228 S.W.2d 421; State Farm Mut. Automobile Ins. Co. v. Arghyris, 1949, 189 Va. 913, 55 S.E.2d 16; and State Compensation Insurance Fund v. Bankers Indemnity Ins. Co., 9 Cir., 1939, 106 F.2d 368. To these cases can be added, State Auto Mut. Ins. Co. v. Sinclair, D.C.Ky.1950, 96 F. Supp. 267; American Mutual Liability Ins. Co. v. Ocean Accident Guarantee Corp., 1935, 87 N.H. 374, 180 A. 249; Brodsky v. Motorists Casualty Ins. Co., 1934, 112 N. J.L. 211, 170 A. 143; and McLaughlin v. Central Surety & Ins. Corp., 1933, 166 A. 621, 11 N.J.Misc. 440.

Of the cases cited, only the cases of State Mut. Ins. Co. v. Sinclair, Farm Mutual Automobile Ins. Co. v. Hammer, and State Farm Mut. Automobile Ins. Co. v. Arghyris arose under statutes like Iowa's, having both security and proof provisions. The other cases cited were decided under earlier statutes, having proof provisions only. However, the rule developed in the earlier cases to the effect that the Financial Responsibility Acts do not affect "voluntary" policies, not certified as proof, is still applied in the cases interpreting the new type Acts. The Commissioner cites some dictum in Travelers Ins. Co. v. Boyd, supra, which arose under the old type Act, to the effect that the new 1946 Kentucky Act, Acts 1946, c. 118, which is said to be like the Iowa Act, requires "proof of ability to respond in damages" immediately upon the happening of the accident, for that accident and for all future accidents. In State Auto Mut. Ins. Co. v. Sinclair, supra, a subsequent Federal case applying Kentucky law, the contention was rejected that the Act affects policies not certified as proof. The Court points out that the policy in question was not certified as proof of financial responsibility under the new Kentucky Act, and holds, after discussing the Boyd case, that the Act does not take away the insurance carrier's right to avoid the policy.

Such cases are not inconsistent with cases holding that policies issued under *proof* sections of Financial Responsibility Acts cannot be avoided. See Century Indemnity Co. v. Simon, D.C.N.J.1948, 77 F.Supp. 221; Montgomery v. Keystone Mut. Casualty Co., 1947, 357 Pa. 223, 53 A.2d 539; American Automobile Ins. Co. v. Penn. Mut. Indemnity Co., D.C.Pa.1946, 66 F.Supp. 159; Polonitz v. Wasilindra, 1944, 155 Pa.Super. 62, 32 A.2d 136; Sky v. Keystone Mut. Casualty Co., 1942, 150 Pa.Super. 613, 29 A.2d 230. Defenses as to coverage have been allowed in some cases even as to "proof policies." See Zurich General Accident & Liability Ins. Co. v. Taylor, D.C. W.Va.1941, 38 F.Supp. 159; Farm Bureau Mut. Automobile Ins. Co. v. Violano, 2 Cir., 1941, 123 F.2d 692; Adkins v. Inland Mutual Ins. Co., 1942, 124 W.Va. 388, 20 S.E.2d 471, 663; Cf., Gergely v. Pioneer Mutual Casualty Co., Ohio App.1947, 74 N.E.2d 432 (policy avoided); Celina Mutual Casualty Co. v. Citizens' Casualty Co., Md.1950, 71 A.2d 20; American Fidelity Co. v. Provencher, 1939, 90 N.H. 16, 3 A. 2d 824 (policy avoided).

It is plain that Sec. 321A.21(6)(a), Code of Iowa has relevance only to policies "required" prior to the reinstatement of operating or registration privileges of those who have demonstrated their financial irresponsibility by failing to satisfy a motor vehicle accident judgment, or their dangerous capacities as drivers by being convicted of a crime in connection with motor vehicles. The section has no bearing on this case. The Commissioner's contention that the Iowa Motor Vehicle Financial and Safety Responsibility Act prevents the plaintiff from now disputing that its policy was in effect at the time of the accident must stand or fall on his claims as to the effect of plaintiff's having filed the "SR 21" form.

In this connection, it must be pointed out that in none of the cases cited supra was the effect of filing such a form an issue. Sec. 321A.37 provides that "This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it." Under this section, decisions on the same point by courts in other states having identical statutes would be very persuasive. However, no decisions from other jurisdictions have been found on the exact point raised by the Commissioner. The Iowa Supreme Court has not passed upon the question. Where appellate decisions are lacking, but a goodly number of the trial courts of a state have generally and for a considerable period of time adhered to a common interpretation, that feature may be considered in determining the local state law. State of California Dept. of Employment v. Fred S. Renauld & Co., 9 Cir., 1950, 179 F.2d 605, 609. While the trial court background in Iowa is not such as to bring that rule into operation here, it is of interest that State District Judge J. E. Heiserman in the case of

234

United Fire & Casualty Co. v. Mras, Case No. 64779, November Term 1951, Linn County, Iowa, held against the Commissioner in a case in which substantially the same issue as is presented here was raised by the Commissioner. In that case a custom farming endorsement on a farm liability policy excluded coverage if the assured's total income from custom farming operations exceeded $1,000 during the 12 months preceding the date of the occurrence. The Court found that the facts were such as to exclude coverage, and held that the insurer's failure to withdraw within 50 days of the accident an "SR 21" form it had filed did not bar or estop the insurance company from raising its defense. In the Mras case the insurance company had requested permission to withdraw its "SR 21" form after the 50 day period and had been refused. It does not appear that any request to withdraw was made in the instant case. However, none of the parties contend that this distinction is significant.

The Commissioner cites the rules, quoted supra, merely as an indication of what he thinks Sec. 321A.5 means. He does not claim that the rules add something to the Act under his rule-making power. Thus the Court need not determine whether Sec. 321A.2(1) empowering the Commissioner to "administer and enforce" the Act and to "make rules and regulations necessary for its administration" gives him power only to make "internal" rules for the management of his office, or whether it gives him power to make "external" rules, having substantive effects on the rights of individuals.

The statute is silent as to the effect on the insurance contract of the filing of the "SR 21" form. Sec. 321A.5 of the Act merely sets out certain conditions under which security is required following an accident, points out that no security is required if automobile liability insurance or a bond is in effect at the time of an accident (or if the owner is a self-insurer), specifies that the insurance or surety company must be authorized to do business in Iowa (or be subject to service of process within this State) and that the policy must have not less than "5–10–1" coverage, and directs the insurance carrier upon receipt of notice of such accident to furnish a written notice that the policy was in effect at the time of the accident. It does not say that the filing of such notice (on the "SR 21" form) shall have any effect whatsoever on the contract rights of the persons interested in the insurance contract.

It is believed this silence is of significance. It would seem that the Legislature did not intend to make the filing of an "SR 21" form change the contract rights of anyone. The Commissioner is apparently of the view that the statute's silence on this point makes the statute sufficiently ambiguous to justify resorting to rules of construction and to extrinsic aids in an attempt to get at the true legislative intent. Numerous Iowa cases hold that resort to rules of construction or to extrinsic aids to determine legislative intent can only be had when the meaning of the statute is doubtful. See, c. g., Iowa Farm Serum Co. v. Board of Pharmacy Examiners, 1949, 240 Iowa 734, 35 N.W.2d 848; Eysink v. Board, 1941, 229 Iowa 1240, 296 N.W. 376; Smith v. Sioux City Stock Yards Co., 1935, 219 Iowa 1142, 260 N.W. 531. For a discussion of the rule, see Note, The Inadequacy of Legislative Recording in Iowa, 35 Iowa Law Review 88, 89–91 (1949). If it be assumed that Sec. 321A.5 is ambiguous as to its effect on insurance policies, the extrinsic aids and rules of construction here applicable do not warrant a holding in the Commissioner's favor.

In the very same Act the Legislature dealt with a situation in which it was deemed essential that the rights of the persons interested in an insurance contract be affected by a transaction between the insurance carrier and the Commissioner, when it provided that a policy certified as proof of financial responsibility for the future could not be avoided. In making such provision the Legislature used a term of art, "motor-vehicle liability policy", which is very carefully limited to the proof portion of the Act. "Proof" is defined in Sec. 321A.1(10) as having reference only to "accidents occurring subsequent to the effective date of said proof". The Commissioner seeks, by implication from the wording of Sec. 321A.5, to have it estab-

lished that there is no real difference, in ultimate effect, between filing a "notice of policy in effect," under Sec. 321A.5, and a "Certificate of * * * proof", under Sec. 321A.19, but no such implied provision can be made in the face of the apparent studied attempt to keep the two separate. The inference from the provisions in the proof portion of the Act, and from the grouping of the sections made by the Legislature is against the position of the Commissioner. If the Legislature had wanted to make the filing of an "SR 21" form under Sec. 321A.5 have any bearing on the rights of the persons interested in the insurance contract, it could easily have said so, just as it did in Sec. 321A.21.

The Commissioner seeks to invoke the rule of construction that the interpretation placed upon an ambiguous statute by the executive agency charged with its enforcement is entitled to great weight in the courts. He cites Banker's Mutual Casualty Co. v. First Nat. Bank of Council Bluffs, 1906, 131 Iowa 456, 108 N.W. 1046; State v. Standard Oil Co. of Indiana, 1937, 222 Iowa 1209, 271 N.W. 185; and New York Life Ins. Co. v. Burbank, 1927, 209 Iowa 199, 216 N.W. 742, as Iowa cases propounding this rule. See also, State ex rel. McElhinney v. All-Iowa Agricultural Ass'n, Iowa 1951, 48 N.W.2d 281; Iowa Farm Serum Co. v. Board of Pharmacy Examiners, 1949, 240 Iowa 734, 35 N.W.2d 848; Fleming v. Richardson, 1946, 237 Iowa 808, 24 N.W.2d 280; Heiliger v. City of Sheldon, 1945, 236 Iowa 146, 18 N.W.2d 182; State v. Robbins, 1944, 235 Iowa 602, 15 N.W.2d 877; Prudential Ins. Co. of America v. Green, 1942, 231 Iowa 1371, 2 N.W.2d 765, 141 A.L.R. 1401.

■ This rule of construction is not employed by the Iowa courts unless (1) the statute is ambiguous, and *apparently* (2) the administrative construction is of long standing. In Iowa Farm Serum Co. v. Board of Pharmacy Examiners, 1949, 240 Iowa 734, 35 N.W.2d 848, 852, it is said: "All authorities agree that the rule with respect to executive construction is restricted to the cases in which the meaning of the statute is really doubtful." See also, on the requirement of ambiguity, State ex rel. McElhinney v. All-Iowa Agricultural Ass'n, State v. Standard Oil Co. of Indiana, and Banker's Mut. Casualty Co. v. First Nat. Bank of Council Bluffs, supra. The Iowa Supreme Court, when referring to administrative construction in support of a decision, has not always recited the requirement that the construction be of long standing. However, the limitation does appear in several cases. See New York Life Ins. Co. v. Burbank, State v. Standard Oil Co. of Indiana, and Heiliger v. City of Sheldon, supra, all using the words "settled practice." In the most recent case, State ex rel. McElhinney v. All-Iowa Agricultural Ass'n, the Court says that "Especially where such construction is of long standing it will not be lightly discarded by the courts." 48 N.W.2d 281, 285. This seems to indicate that the length of time passed might go to the persuasiveness of the administrative construction rather than to the applicability of the rule. In the Banker's Mut. Casualty case, supra, the administrative construction had continued for 10 years; in New York Life Ins. Co. v. Burbank, supra, for 55 years; in Heiliger v. City of Sheldon, supra, "many years"—at least 15; in State v. Standard Oil Co. of Indiana, supra, it was not less than 6 years and perhaps as much as 10 years. In the case at bar the Commissioner has construed the statute as he now does since the Act went into effect on October 1, 1947, about 4 years prior to the commencement of this action. The Commissioner's interpretation was indicated formally when his rules were promulgated on August 4, 1949, slightly over 2 years prior to the commencement of this action.

■ The Court is of the view that the statute in question is not ambiguous. The Court is also of the view that, if it be so considered, its administrative interpretation and construction is lacking in persuasiveness. In Prudential Ins. Co. of America v. Green, 1942, 231 Iowa 1371, 2 N.W.2d 765, 771, 141 A.L.R. 1401, the Iowa Supreme Court quotes with approval an observation of the trial court in that case, as follows: "* * * departmental construction will never rise to the dignity of a decision by a court of competent jurisdiction

considering the statute. It is to be taken as persuasive, a matter for argument, for thought. When a case comes before a court requiring the construction of a law which has had a departmental construction over a long period of years, courts are loathe to upset that, but it can never rise to the point where it has the binding force on the court that a decision of the appellate tribunal of this state has." In that case, as has been done in the instant case, the administrative construction was noted, considered, and rejected. Cf., Mogis v. Lyman-Richey Sand & Gravel Corp., 8 Cir., 1951, 189 F. 2d 130, Comment, 36 Minn.L.Rev. 100 (1951). It is the claim of the Commissioner that his construction of the Act is in accord with that of those charged with the administration of similar acts in certain other states. In the light of the mandate of Sec. 321A.37 that the Act be construed so as to make uniform the laws of the states. which enact it, this claim has been given consideration by the Court, but nevertheless the Court is of the view that such is not the proper construction.

 The Commissioner argues also that, because the Legislature has met twice during the period over which his interpretation of the Act has continued and has not amended the Act, the Legislature has impliedly approved his construction. In John Hancock Mut. Life Ins. Co. v. Lookingbill, 1934, 218 Iowa 373, 253 N.W. 604, it is stated that the Legislature is presumed to know the construction placed on its statutes by the executive departments of the state, and this statement is quoted in State ex rel. Pew v. Independent Order of Foresters, 1939, 226 Iowa 1339, 286 N.W. 425. The presumption that the members of the Iowa Legislature have knowledge of the many and various administrative rules and interpretations where, as heretofore there has been no provision for their official publication, might in many cases be contrary to the facts. Perhaps such presumption will have more validity when the "Iowa Departmental Rules" are published, as provided for in Iowa Acts 1951, Ch. 51, I.C.A. § 17A.1 et seq. In any event, application of the doctrine of implied legislative acquiescence in an administrative construction of a statute because of inaction is subject to the requirement, heretofore referred to, that the statute must be ambiguous. See Iowa Farm Serum Co. v. Board of Pharmacy Examiners, supra. Moreover, the requirement that the administrative construction be of long standing has more significance with respect to the doctrine of implied legislative approval than it does with respect to the rule that weight is to be given to administrative interpretations, discussed supra, because the amount of time which has elapsed has a direct relationship to the validity of the assumption that the Legislature is familiar with the construction placed on a statute by the administrator and has deliberately chosen not to act on it. In this connection, it should be noted that in the Lookingbill and Foresters cases, supra, the administrative interpretations had continued for 20 and 40 years respectively, and in each instance the statutes had survived the extensive revision of the Iowa statutes made prior to the publication of the Iowa Code of 1924. In Heiliger v. City of Sheldon, 1945, 236 Iowa 146, 18 N.W.2d 182, the construction had been for "many years"—at least 15—and the Commissioner's views had been expressed in recommendations for change made in required reports to the Governor, which recommendations the Governor was required to transmit to the General Assembly.

In Prudential Ins. Co. of America v. Green, 1942, 231 Iowa 1371, 2 N.W.2d 765, 772, 141 A.L.R. 1401, the Court quotes from the Foresters case, then distinguishes it as follows: "The evidence of acquiescence by the legislature in departmental construction on the issue presented herein is not strong. Its persuasive effect is thereby diminished. It is not controlling in any event." In Girouard v. United States, 1946, 328 U.S. 61, 69, 66 S.Ct. 826, 830, 90 L.Ed. 1084, the Court says: "It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law." In the case of In re Continental Casualty Co., 1920, 189 Iowa 933, 179 N.W. 185, 187, the Iowa Supreme Court says, in response to an argument that the Legislature had "construed" a statute to have a certain meaning,

"Moreover, if there had been a legislative construction, it would adjudicate nothing. The only effective thing which such Legislature could do would be to enact new legislation or to repeal or amend the old. It could not change existing law by mere construction."

In the instant case the Court feels that the failure of the Legislature to act is not of determinative significance. The statute is not ambiguous, the administrative interpretation of the statute has continued for only a short time, and there is no indication that the Legislature was aware of or considered the problem.

There is very little in the legislative history of the Act to assist one in arriving at the intent of the Legislature. The debates in the Iowa Legislature are not reported. The reports of committees which appear in the House and Senate Journals contain only the recommendations of the committee as to what should be the action on bills. Cf., Note, the Inadequacy of Legislative Recording in Iowa, 35 Iowa Law Review 88 (1949). The House and Senate Journals relating to the Act in question show that several amendments were made prior to final approval of the bill. None of the amendments shed any light on the question at hand. The fact that the bill was apparently well-considered by the Legislature, as evidenced by the several amendments to small details of the bill, might lead to the inference that the Legislature said all it intended to say, and that nothing of substantive effect was left to implication.

Both the plaintiff and the Commissioner cite an "Explanation" of the House bill. This "Explanation" was attached to the bill by those sponsoring it in the House. It recites the inadequacies of the then-existing Iowa statutes, which required only the suspension of a driver's license for failure to pay an accident judgment, and attempts to explain how the proposed bill remedies the situation. Plaintiff cites the explanation because it points out that the Act is not a compulsory insurance law. This is conceded. The Commissioner cites the explanation because it says that "all drivers involved in such accident [one causing injury to person or damage to property of another in excess of $50.00] are *required* to *guarantee* the payment of damages within reasonable limits of the law, or their license will be suspended. * * *" (Italics added.) The Commissioner argues that an owner or operator who is involved in such an accident must, to avoid suspension of his license or registration, *guarantee* payment of damages either by depositing cash as security or by having in effect an insurance policy (or surety bond); that if a person is exempt from depositing cash because he has insurance, such insurance must be his guarantee that the damages will be paid in the event an adverse judgment is obtained; thus the policy cannot be avoided.

It is believed that the Commissioner claims too much for the word "guarantee" used in the explanation. The author of the explanation of the bill was trying to present a very brief, general sketch of the provisions and aims of the bill. In practical effect, in most cases the notice that a policy was in effect at the time of an accident, would be tantamount to a "guarantee" of payment of the damages; for it would be a rare case in which the insurance carrier would belatedly discover facts which it could seriously contend entitle it to avoid the policy. The instant case is such a case. The author of the explanation did not purport to venture an opinion as to the effect of the Act in the exceptional case where an insurer mistakenly gives notice of coverage and discovers its mistake after the 50 day period has expired. Therefore, little significance can be attributed to his use of the word "guarantee."

The Act does not make use of the word "guarantee." It is true that Sec. 321A.5 seems to contemplate only a valid policy. The insurance carrier is directed to give notice that the policy is "in effect." The Commissioner is of the view that, under that Section, an insurance carrier must, at its peril, within 50 days discover facts which might give it a right to avoid the policy. The wording of the Act does not compel a holding that the filing of a notice of policy in effect as to a policy which is discovered to be avoidable after it has become operative to preserve driving or

registration privileges constitutes incontestable *proof* of security. The rights of plaintiff, the insured, and the injured persons became fixed at the instant of the accident. Clearly, the plaintiff could at that time have avoided the policy if it had been procured by fraud. The statute does not state that plaintiff loses that right by allowing the "SR 21" form to remain on file after the 50 day period.

The statute does not manifest an intent on the part of the Legislature that the filing of an "SR 21" report shall affect private contract rights. While the Commissioner expressly disclaims rule-making power, it would seem that, in his insistence that an insurer who does not withdraw an "SR 21" report filed by it within fifty days after filing thereby loses its right to withdraw and also loses its right to thereafter avoid the policy, he is attempting to add to the statute. Cf. Eggermont v. Central Surety & Insurance Corp., 1945, 236 Iowa 197, 17 N.W.2d 840, 843.

 The Commissioner, in addition to his contentions as to the proper interpretation to be placed on the statute, also contends that the plaintiff, by filing and failing to withdraw the "SR 21" form, knowing the interpretation which the Commissioner would place on such action, is estopped from now disputing coverage. The elements of estoppel *in pais* in Iowa have been listed as (1) an act or representation on the part of the one against whom the estoppel is invoked, (2) with the intention that reliance should be placed on such act or representation, (3) justifiable reliance on the same, and (4) prejudice resulting from such reliance. See Sloan, Iowa Law of Estoppel by Record and Estoppel In Pais, 17 Iowa Law Review 472 (1932). The act, in the instant case, was the filing of the "SR 21" form, which represented that insurance was in effect. Plaintiff knew that the Commissioner would rely on such filing, and thus can be assumed to have intended that there be reliance on the filing. The Commissioner did in fact rely on the filing, because he withheld action to suspend Wayne R. Fox's operating and registration privileges. Thus far, then, the elements of estoppel are present. It has been

remarked that the element of fraud is essential to estoppel. See Anfenson v. Banks, 1917, 180 Iowa 1066, 1092, 163 N.W. 608, 616, L.R.A.1918D, 482. However, it seems clear that there is no necessity of fraudulent intent. What is required is a "fraudulent result," that is, a misleading of the relying party to his injury because of his reliance on an act or representation of fact which could reasonably have been expected to induce such reliance. See, Wetzstein v. Dehrkoop, 1950, 241 Iowa 1237, 44 N.W.2d 695, 699; Hart v. Worthington, 1947, 238 Iowa 1205, 1219–1220, 30 N.W.2d 306, 313, and the article by Sloan, supra. In other words "An estoppel is based upon the idea that one who has made a certain representation * * *, should not thereafter be permitted to change his position to the prejudice of one who has relied thereon." Wetzstein v. Dehrkoop, supra, 44 N.W.2d at page 698, quoting Seymour v. City of Ames, 1934, 218 Iowa 615, 619, 255 N.W. 874, 876.

 As to the requirement of harm or prejudice, the Commissioner claims to have changed his position in reliance on plaintiff's filing the "SR 21" form, to the detriment of the State of Iowa in two ways: (1) such filing has prevented the suspension of Wayne R. Fox's license and registration, (2) the Commissioner, given only 60 days to act under Sec. 321A.5, cannot now suspend Wayne R. Fox's license and registration if it should turn out that the policy was not in effect at the time of the accident. Additionally, he claims harm to the State of Iowa in that enforcement of state law will be frustrated if it should be established that the effectiveness of policies as to which "SR 21" notices are left on file after the 50 day period can be challenged. The question of the Commissioner's power to suspend licenses under the security section after 60 days is not before the Court. Assuming, without deciding, that the Commissioner is correct in his assumption, and that the State of Iowa has been misled by the plaintiff to its disadvantage in the particulars claimed, that still would not constitute a defense to plaintiff's complaint for declaratory relief.

Plaintiff seeks only to have it declared that the policy is of no effect as between it, Wayne R. Fox, and the injured persons. Wayne R. Fox, of course, has no standing to claim the benefit of an estoppel because of the filing of the form, and neither do the injured persons. They claim pecuniary loss, but they suffered no loss in reliance on plaintiff's filing the "SR 21" form, for it was filed *after* the accident. At the time of the accident nothing that plaintiff had done had any relation to Wayne R. Fox's having operating and registration privileges. Any possible disadvantage to the State of Iowa resulting from reliance on plaintiff's action cannot inure to the benefit of these injured persons. The Court's attention has not been called to any cases permitting a "third party beneficiary estoppel." The question as to whether an insurance carrier would be estopped to deny coverage as to a victim of a second accident had by one whose operating or registration privileges had been preserved by the filing of an "SR 21" form need not be decided in this case. But see, dictum by a New Jersey court in United States Casualty Co. v. Timmerman, 1935, 118 N.J.Eq. 563, 180 A. 629.

Plaintiff's filing the "SR 21" form does not constitute a *waiver*, for there was no intentional relinquishment of known rights. It is not alleged or claimed that plaintiff knew the facts on which it now bases its claim of standing to avoid the policy at the time the "SR 21" notice was filed, or prior to the end of the 50 day period during which the Commissioner would have allowed withdrawal. No serious contention is made that there is a contract between plaintiff and the Commissioner for the benefit of the injured persons. It would be possible to consider that the representation that the policy was in effect might be a promise not to contest coverage, offered in exchange for the Commissioner's "act" of not suspending Wayne R. Fox's license. However, there is no indication that there was any such agreed exchange of promise for an act. Indeed, it would not be reasonable to suppose that plaintiff intended to make such a promise by implication from its filing the "SR 21" form. No "agreed exchange" of act for promise would need to exist to work a promissory estoppel, but promissory estoppel is subject to the same requirement as to prejudice as is the general doctrine of estoppel *in pais,* and for that reason cannot be invoked here. See Swift v. Petersen, 1949, 240 Iowa 715, 37 N.W.2d 258.

The Commissioner asks that it be held that the plaintiff cannot avoid the policy either as to Wayne R. Fox or as to the parties injured in the accident. The defendants Joe Zieons and Ralph Eakins assert that whatever the situation might be as to the right of the plaintiff to avoid the policy as against Wayne R. Fox, it cannot avoid the policy as to them. It is their claim that the insurer by filing an "SR 21" form and not withdrawing it within the 50 day period lost its rights to avoid the policy as against them. In other words it is their claim that their rights under the policy are superior to the rights of the insured. It is a general rule that an injured person is under the same disabilities in connection with the insurance carried by the tort-feasor as is the tort-feasor. Metropolitan Casualty Ins. Co. of New York v. Colthurst, 9 Cir., 1929, 36 F.2d 559, 561, certiorari denied, 1929, 281 U.S. 746, 50 S.Ct. 351, 74 L.Ed. 1158. However either by statute or contract a third party may have rights against the insurer which are independent of the rights of the insured. As heretofore noted, it has been held that policies issued under the proof sections of Financial Responsibility Acts cannot be avoided by the insurer as to accidents occurring in connection with the operation of the insured motor vehicle thereafter. In such cases the rights of the injured persons are regarded as independent and primary. In some of such cases the situation was regarded as being analogous to a fire insurance policy with a standard mortgagee clause attached. United States Casualty Co. v. Timmerman, 1935, 118 N.J. Eq. 563, 180 A. 629. In Iowa the so-called "union mortgage clause" prevents the insurer from asserting as against the mortgagee that the policy was void in its inception because of false statements by the mortgagor who procured the insurance. See People's Savings Bank v. Retail Mer-

chants Mutual Fire Association, 1909, 146 Iowa 536, 123 N.W. 198, 31 L.R.A.,N.S., 455. See Conard v. Moreland, 1941, 230 Iowa 520, 298 N.W. 628. Such "union" or "standard" clauses contain express provisions that the insurance as to the mortgagee shall not be invalidated by any act or default of the mortgagor or owner. See People's Savings Bank v. Retail Merchants Mutual Fire Association, supra, and Shepherdson Co. v. Central Fire Ins. Co., 1945, 220 Minn. 401, 19 N.W.2d 772. The "SR 21" contains no similar provision. The Iowa Motor Vehicle Financial and Safety Responsibility Act contains no provision that can be construed as providing that the rights of parties whose situation is similar to those of the injured persons in the present case rise higher than the rights of the insured. In the absence of express contractual provision or explicit statutory provision the courts are reluctant to hold that third persons have higher rights under a policy of insurance than the insured. In the case of Georgia Casualty Co. v. Boyd, 9 Cir., 1929, 34 F.2d 116, it was argued that, because a California statute took away the insured's insolvency or bankruptcy as a defense to his liability insurer, the injured person could recover on a policy voidable as between the parties thereto. The Court in that case stated at page 118 of 34 F.2d: "Appellee's position would be tenable in the case of a valid contract of insurance, but it is quite incredible that the Legislature, even were its power to be granted, intended to vest in a third person, who parted with no consideration, a right superior to that of the assured himself, or to give validity in favor of such third person to an instrument void as between the parties thereto." In the case of Hill v. Standard Mut. Casualty Co., 7 Cir., 1940, 110 F.2d 1001, at page 1004, where a person riding as a guest in the insured's automobile sought to assert rights against his insurer, the Court stated: "Defenses available against the assured are available against the injured party, and the latter can have no greater rights than the former's policy can confer on him."

It is the holding of the Court that if the insurance policy in question is voidable as between the plaintiff and Wayne R. Fox because of fraud in its procurement it is also subject to the same contingency as to the other parties to the action.

Orders will be entered as follows:

(1) Dismissing the counterclaims of the defendants Joe Zieons and Ralph Eakins against the plaintiff, on the ground that they may not be maintained under the doctrine of the case of Erie Railroad Company v. Tompkins, supra;

(2) Dismissing the cross-claims of the defendants Joe Zieons and Ralph Eakins against the defendant Wayne R. Fox for lack of jurisdiction;

(3) Striking the answer of Pearl McMurry, Commissioner;

(4) Striking the defenses of the defendants Joe Zieons and Ralph Eakins which are based upon the Iowa Motor Vehicle Financial and Safety Responsibility Act.

The defendants Wayne R. Fox, Joe Zieons, Ralph Eakins, and Betty Kriegel Williamson, administratrix, in their answers raised other issues in connection with the claim of the plaintiff for declaratory relief. Those issues are factual in character. The case will stand for trial as to those issues.